# Richmond.

SEDGWICK'S CURATOR V. TAYLOR.

MAY 3d, 1888.

Absent, Richardson, J.

1. TRUSTS—*Beneficiaries—Construction—Estoppel.*—Trust deed directs trustee to permit wife to "have free and undisturbed possession and use of the land, taking the rents and profits to her own use during her life," and after her death to hold the property for benefit of her children. It also authorizes trustee to convert the land into money, "to be held as aforesaid":

HELD :
> The wife is entitled to only the income though the land has been converted into money. But where the *corpus* has been turned over to her, she cannot maintain an action against trustee for income after she has expended the *corpus*.

2. IDEM—*Acquiescence by remainder-man—Proviso.*—Remainder-man in such trust *may* acquiesce in such turning over of the *corpus* to life-tenant, and he is bound thereby, unless it appears that at the time thereof he was uneducated, just of age, dependent upon the trustee, and that the trust accounts were uncertain and full knowledge in him of all the circumstances was not clearly shown.

3. IDEM—*Judicious use of corpus—Burden of proof.*—Under such trust deed trustee must show that the use of the *corpus* by life-tenant is plainly such a judicious use thereof as the court will sanction.

4. IDEM—*Remainder-man may sue.*—Under such trust deed where the *corpus* has been expended by trustee, remainder-man may, whilst life-tenant is living, maintain his suit for the protection of his interest.

5. IDEM—*Staleness.*—Under such trust deed whilst life-tenant is living, remainder-man's interests being contingent, and his right to demand payment of the principal fund not having attached, the objection of *staleness* will not lie to his claim. *Effinger* v. *Hall*, 81 Va., 94.

Appeal from decree of chancery court of city of Richmond, rendered August 4th, 1886, in the cause wherein the appellees, Martha Taylor and J. Nathaniel Taylor, are complainants, and the appellant, William H. Scott, curator of the estate of Richard Sedgwick, deceased, is defendant.    Opinion states the case.

*McGuire & Ellett*, for the appellant.

*Cannon & Courtney*, for the appellees.

LEWIS, P., delivered the opinion of the court.

It is clear, upon a fair construction of the trust deed of June 27, 1846, that the female plaintiff in the court below, Mrs. Martha Taylor, was entitled for her life to *the income* of the trust estate only.    The property, which consisted of a house and lot in the town of Manchester, was conveyed to Richard Sedgwick, trustee, "upon trust that the said Richard Sedgwick shall permit the said Martha Taylor to have free and undisturbed possession and use of the parcel of land aforesaid taking the rents and profits thereof to her own use during the term of her natural life," and after her death the property to be held by the trustee for the benefit of all the children of the said Martha Taylor by her then husband, who might be living at her death, and the heirs of such as may have died in her lifetime leaving issue, etc.    The trustee was also authorized to convert the land into money or other property " to be held as aforesaid."

The property was subsequently sold by the trustee, in June, 1857, for $1,580 cash, which he received and receipted for, and the money so received constituted the fund which is the subject of this controversy.    The trustee is dead, and the suit to recover the fund is brought against his estate.

One of the grounds of defence relied on in the court below was that the whole fund, principal and interest, had from time

to time been paid by the trustee in his lifetime to the said Martha Taylor for the maintenance and support of herself and infant children; and it is claimed that such payment and use of the capital fund was necessary and authorized by the terms of the trust deed. The chancery court, however, held otherwise, and, as we think, correctly.

The language of the deed is too plain to admit of doubt, and repels the idea that the life tenant was, under any circumstances, entitled to any thing more than the income of the estate. And the case is not altered by the fact that the real estate was converted into money; for the powers and duties of the trustee in respect to the trust estate remained exactly the same. The provision in the deed that the life tenant was to have the use and possession of the land, cannot by possibility be construed as giving her the right to *the principal* of the fund arising from the sale of the land, and the payment of the principal to her was therefore a plain breach of trust, for which the estate of the trustee is liable, but not to *her*. We are satisfied from the record that she received from the trustee in his lifetime the whole fund, and it does not, therefore, lie in her mouth to complain that there is no longer any income to be applied for her benefit. When the payments were made, she was *sui juris*, and competent to act for herself, and is therefore bound by the payments which were made to her by the trustee at her request. It would be gross injustice to hold otherwise, and the chancery court rightly decreed that her interest in the estate has been satisfied and extinguished.

The only remaining question, then, is whether the decree is right in holding that the estate of the trustee is liable to the remainder-man for the *corpus* of the estate; and we are of opinion that it is.

"It is a settled rule, that trustees for infants should never, on their own authority, break in upon the capital of the trust fund for the maintenance, and seldom for the advancement, of their ward. This is a rule for the protection of children,

and if trustees break it, their accounts will be disallowed, although the particular case is a hardship; as it is better that a single individual should suffer a hardship which he might have avoided, than that the interests of all infants should be endangered. Sir William Grant expressed a doubt whether the court itself had power to authorize the expenditure of the trust fund for the infant's support and advancement. It is now, however, well established, that the court has such power, and will exercise it with caution in a proper case. But if the trustee exercises the power by breaking in upon the trust fund for mere maintenance, without leave, he will be compelled to replace it." 2 Perry on Trusts (3d ed.) sec. 618, and cases cited.

The rule, it is true, is not inflexible, and the court, in a plain case, will sanction the expenditure of the principal fund if proper and judicious, and such as it would have authorized had application to it been previously made. But the burden is on the trustee to show that the expenditure was proper and necessary, and if he fails to do so, he will not be allowed credit in his accounts for the amount paid out. *Barton* v. *Bowen,* 27 Gratt, 849; *Cogbill* v. *Boyd,* 77 Va., 450. And where there is a limitation over to a stranger, neither the trustee nor the court can expend any part of the capital. 2 Perry on Trusts, sec. 619.

In the present case, it is conceded that all the children of the life tenant by her late husband, Nathaniel Taylor, except the male appellee, are dead, and that they died without issue, so that the male appellee will be entitled to the trust fund at the death of his mother, provided he survives her. If he does not, and dies leaving issue in her lifetime, then it will go to his heirs; but if he dies in her lifetime without leaving issue, then it will go to the heirs of his father, the said Nathaniel Taylor, deceased. It is obvious, therefore, that until the death of Mrs. Martha Taylor, it cannot be determined to whom the fund will go.

It is contended, however, by the appellants that there has been such acquiescence on the part of the male appellee in the expenditure by the trustee of the principal fund, as to preclude him from asserting the claim now set up by him. But this position is not supported by the record. In the first place, no such defence is set up in the answer, or proved by the evidence; and, besides, equity will relieve against a breach of trust, notwithstanding there has been express or implied acquiescence, where the *cestui que trust* has not had due information of the circumstances. The rule, supported by all the authorities, is that no acquiescence will prejudice a *cestui que trust* without full knowledge of all the facts and circumstances; and it lies upon a trustee who is charged with a breach of trust, and who rests his defence upon the acquiescence of the *cestui que trust*, to show that the latter had such knowledge. In Hill on Trustees, marg. p. 527, it is laid down that where, in such a case, it is doubtful whether the *cestui que trust* had knowledge of the facts, it will be referred to a master to inquire and report upon the point. But this reference will not be directed where the defence of acquiescence is not raised by the answer, and is not proved by the evidence.

In 2 Perry on Trusts, sec. 851, it is said, upon the authority of numerous adjudged cases, that while the *cestui que trust* may waive a breach of trust, yet all agreements between the trustee and *cestui que trust* are looked upon with suspicion by the court, and are closely scrutinized. It is also said that, in order that the acquiescence of the *cestui que trust* may have any effect, he must have full knowledge of the case. He must know the law, and what his rights are, and if he has just come of age, he ought to have proper legal advice.

In *Hylton* v. *Hylton*, 2 Ves. Sr., 548, Lord Hardwicke said that, " where a man acts as guardian, or trustee in nature of a guardian, for an infant, the court is extremely watchful to prevent that person's taking any advantage, immediately upon his ward's coming of age, and at the time of settling accounts or

delivering up the trust, because an undue advantage may be taken." And, in *Hatch* v. *Hatch,* 9 Ves., 297, Lord Eldon, speaking of such transactions, remarked that, "if the court does not watch them with a jealousy almost invincible, in a great majority of cases it will lend its assistance to fraud." See als *Rowe* v. *Bentley,* 29 Gratt., 756; *Lamar* v. *Hale,* 79 Va., 147. These are elementary principles for which the citation of authority is hardly necessary.

In some of the cases it is held that a remainder-man cannot acquiesce in a breach of trust, so as to be bound, until his interest falls into possession. In other cases, however, and with better reason, it is held that a *cestui que trust,* whose interest is reversionary, though not bound to assert his title until he comes into possession, is not less capable of giving his assent to a breach of trust while the interest is in reversion, than when it is in possession; and whether he has done so or not, depends on the particular facts of each case. (Kerr on Fraud and Mistake, 303.)

The evidence, however, in any case, must be clear and cogent; and, as we have said, acquiescence to be binding, must have been with full knowledge of all the facts and circumstances.

Tested by these principles, it is clear that the decree complained of is right. There was no such knowledge of the facts of the case on the part of the male appellee at the time of his alleged acquiescence in the conduct of the trustee as to sustain the defence of acquiescence set up by the appellants. Indeed, the evidence not only lacks the clearness and cogency required in such a case, but is extremely vague and unsatisfactory. Moreover, the appellee, at the time of his alleged acquiescence, was a young man, having only a short time before come of age, and acted without legal advice. It is also inferable from the record that he had but little, if any, education, and that he was dependent upon his labor for a livelihood. He seems to have had no regular employment, and was occasionally em-

ployed in a subordinate capacity, by his uncle, the trustee, in his business as a grocer. He was hardly, therefore, in a situation either to understand much of accounts or to engage in a legal controversy, especially with his employer. Besides, he was not bound to assert any claim, as his interest was, and is, altogether contingent upon his surviving his mother, who is still living.

It is quite probable, too, that he was ignorant of his rights, and of the true construction of the trust-deed, and of the law, which, under ordinary circumstances, forbids a trustee to break in upon the *corpus* of the trust-fund. At all events, the evidence does not show that he had full knowledge of the case, or such information respecting it as a *cestui que trust* must have to be bound by his acquiescence. The trustee did not keep clear, distinct, and accurate accounts, as it is the duty of a trustee to do, and having failed to do so, " all obscurities and doubts are to be taken adversely to him." (2 Perry on Trusts, sec. 821.)

The commissioner, to whom the cause was referred, reported that it was impossible to state any accurate account of the trust-fund, because, among other things, of the failure of the trustee to keep his accounts in any distinct form; and it is apparent, from the evidence of the defendants themselves, that any information in respect to the accounts which was imparted to the *cestuis que trust*, was of the most general and imperfect nature.

Thus, the principal witness for the defendants, R. E. Sedgwick, a son of the trustee, testifies that his father kept a grocery store in this city, and furnished supplies to the life-tenant for a number of years, during a portion of which time she kept a boarding house, after her removal from Manchester, where she lived until the sale of the trust property in 1857. The witness says he was employed in his father's store, and that they together kept the books; that in April, 1865, the fund had been reduced to the sum of $884, and in April, 1867,

to $631 81, of which the *cestuis que trust* were "apprized, and they made no objection." This, however, was before the male appellee attained his majority; and the evidence upon the point of acquiescence after he became of age is equally vague. The same witness testifies that about the first of March, 1869, both his father and himself remarked, on one occasion, to Mrs. Taylor and her son, who were present together in the store, that "they had gotten all they were entitled to." He does not say they made any reply, or that the accounts were exhibited to them. He does say, however, that he had previously gone over the account with the male appellee, and that he made no objection to it; but he does not say whether that was before or after he became of age. Indeed, the statements of the witness are vague throughout.

The evidence is open to criticism in a number of particulars, but it is needless to further comment upon it. It is sufficient to say we have examined it carefully, and that it neither shows justification for the palpable breach of trust on the part of the trustee in expending the *corpus* of the trust estate, nor legal acquiescence on the part of the remainder-man.

Lastly, the objection that the claim is stale is also untenable, so far as the male appellee is concerned. The life-tenant is still living; and the interests in remainder, under the trust deed, being contingent, the right to demand payment of the principal fund has not yet accrued. It was competent, however, for the male appellee to maintain a suit to have the fund collected, and his interests protected. *Effinger* v. *Hall*, 81 Va., 94; *Ross* v. *Ross*, 12 Beav., 89; 1 Danl. Ch. Pr. (5th ed.), 316. The decree is affirmed.

DECREE AFFIRMED.