# Richmond.

STEWART AND ANOTHER v. CONRAD'S ADMINISTRATOR.

January 23, 1902.

1. CHANCERY P R A C T I C E—*Answer—General Replication—Signature—Coverture.*—If an answer in chancery avers that an agreement was made by the complainant, who is a married woman, a general replication by her, not under oath, will put in issue her capacity to make the agreement, but not the genuineness of her signature. Code, sec. 3279.

2. LAW OF ANOTHER STATE—*Presumption—Disability of Married Women.*—In the absence of evidence to the contrary the common law is presumed to be in force in Pennsylvania, and under it the contracts of married women are void.

3. ALIEN ENEMY—*Husband and Wife—Disability of Wife.*—The mere fact that a married woman resided in Pennsylvania during the civil war, whilst her husband was in the army of the Confederate States, would not remove her disability to contract, especially where before, during, and since the war they have fully recognized their marital relations.

4. ESTOPPEL—*Married Women—Fraud.*—A married woman will not be estopped to set up her coverture in bar of a release executed by her in the absence of evidence of any fraud, misrepresentation, or concealment on her part, or that the party released did not have full knowledge of the fact that she was a married woman and unable to execute the release.

5. LACHES—*Preservation of Trust Fund—Suit by Remaindermen.*—Remaindermen after a life estate in a trust fund may invoke the aid of a court of equity to prevent or remedy a violation of the trust, and to preserve the trust fund, but they are under no legal obligation to do so, and are not chargeable with laches for a failure to assert rights not yet accrued.

6. WILLS—*Legacy to Creditors—Presumption—Residuary Legacy.*—The general rule that a legacy given by a debtor to his creditor, which is equal to or greater than the debt, is, in the absence of evidence

to the contrary, deemed to be a satisfaction of the debt, does not apply where the legacy is contingent, as in case of residuary legatees, for it may turn out that the legacy is not equal to the debt.

7. APPEAL AND ERROR—*Objection to Deposition—How Saved in Trial Court—Waiver.*—A party who objects to the deposition of a witness, if he wishes to rely upon the exception, must bring it to the attention of the court below so that it may be passed upon by that court; and unless the record shows that this has been done, the exception will be treated in the appellate court as waived.

Appeal from a decree pronounced October 30, 1899, by the Circuit Court of Middlesex county in a suit in chancery, wherein the appellants and others were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*T. G. Jones, A. J. Montague* and *S. A. Anderson,* for the appellants.

*Jones, Woodward & Phillips,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The bill in this case, which was filed by Mrs. Sarah A. Edwards, and her three sons—Enoch, John B., and W. G. Edwards—and her daughter, Mary C. Stewart, and the latter's husband, James M. Stewart, alleges (among other things not material on this appeal) that the will of Mathew Conrad (deceased), which was admitted to probate in the Orphans' Court for the city of Philadelphia, State of Pennsylvania, in April, 1851, contained the following provision: "I give and bequeath unto Wm. A. Potter and John B. McKeever the sum of ($20,000) twenty thousand dollars, in trust to put or place and keep the same out at interest on good real security, and to collect and receive the interest arising therefrom, and pay the same over from time to time when, and as the same shall be got in and received, unto

my daughters, Sarah Ann Edwards, wife of Wm. C. Edwards, in each and every year during all the term of her natural life, . . . and from and immediately after the decease of my said daughter, Sarah A. Edwards, then in trust to pay over the said principal sum of $20,000, and the interest accruing thereon, unto all and every the child and children which she, my said daughter, Sarah Ann, may leave, and the lawful issue of any of them who may then be deceased having left such issue, such issue, if one person, solely, or if several persons in equal shares, taking and receiving only such part or share thereof as his, her, or their deceased parent or parents would have had and taken, had he, she, or they been then living"; that subsequently, in November, 1851, by an order of said Orphans' Court, Potter and McKeever, the trustees named, were removed, and W. C. Conrad was appointed trustee in their place, and gave bond and security; that in July, 1860, the Orphans' Court, upon the petition of the complainant, Sarah A. Edwards, directed Conrad, trustee, out of the principal of the trust fund, to pay $775, reducing that fund to the sum of $19,225; that Conrad, trustee, has paid a portion of the interest due the life tenant, but there is a large balance of interest due her; that he did not, as it was his duty to do under the will, "put and keep" the trust fund at interest on good real estate security, but mingled the same with his own private funds, and used it in private speculation or otherwise in violation of his trust, and that they are advised, believe and charge that a large part of the trust fund was used by the trustee in the purchase of real estate of which he died seised and possessed in the county of Middlesex, in this State; that the complainants, Mary C. Stewart, Enoch Edwards, John B. Edwards and W. C. Edwards, or their descendants who may be living at the death of their mother, will be entitled to the said trust fund in fee simple, and that they are advised that the estate of said Conrad, trustee, who departed this life testate in the year 1897, is liable for the interest now due the life tenant,

and also for the payment of the principal, which the complainants are advised should be collected by the aid of the court and so disposed of under its direction as that the same shall be held subject to the uses and trusts created by the will of Mathew Conrad.

The personal representative of the trustee filed his answer to the bill, in which he admitted that his testator was appointed trustee, and had accepted the trust, as alleged in the bill, but denied that he had misappropriated the trust fund or used it as his own, or that his testator's estate was indebted to the complainants on that account, but alleged that his testator in his lifetime paid off and discharged the whole of said trust fund to the parties entitled in the following manner, viz: that in 1862 his testator, as trustee, made up a statement of his account, under oath, showing that, as of the 1st day of March of that year, there was a balance in his hands of $15,451.88, which account he presented to the parties in interest; that by a writing dated May 2, 1862, they acknowledged the same to be correct, and agreed upon a transfer of certain securities held by him as such trustee to a substituted trustee, and that the securities, aggregating $19,500, should be received in full settlement of the trust; that on the 6th day of June following, the complainants entered into a contract, under seal, by which they released his intestate, as trustee, from the trust, and from all liability on account thereof; that at the date of the release two of the complainants, Enoch and J. B. Edwards, were under twenty-one years of age, and that the other complainants, who were adults, by the same writing, pledged their interest in the trust fund for the protection of the trustee against any claim that the said minors might thereafter make against him as trustee; that the said last-named agreement (which, together with the other writings referred to in the answer, are filed as exhibits therewith), was signed by all the parties in interest, and turned over to the said trustee in his lifetime, who transferred, assigned and de-

livered to the complainant, W. C. Edwards, substituted trustee, all the evidences of debt and securities named, which at that time were listed at $19,500; that the said W. C. Edwards afterwards, with the consent of the life tenant, paid over the trust fund to her children, the remaindermen; that the claim asserted by the complainants had been fully discharged, but if it had not been it was barred by the statute of limitations, or, if not, a court of equity would not give relief because of the lapse of time, staleness of the demand, and acquiescence in the settlement made in 1862.

To this answer the complainants filed a general replication. Upon the hearing of the cause the court dismissed the bill, and from that decree Mrs. Stewart and her husband appealed.

The other complainants do not, and could not, complain of that decree, as it clearly appears that they had by the agreement and writings filed with the answer of his executor released the trustee from all liability, and that they had no claim against his estate. Whilst the name of Mrs. Stewart is signed to the agreement of release, dated June 6, 1862, she claims that it is not her signature, and, if it were, that she is not bound by the writing, as she was at that time, and still is, a married woman.

The question of whether or not her signature was genuine cannot be raised under the pleadings in the cause. The answer avers that she made the agreement of release. To this there was a general replication, but with it there was no affidavit denying the signature.

Section 3279 of the Code provides that where a declaration, or *other pleading*, alleges that any person made, endorsed, assigned or accepted any writing, no proof of the handwriting of such person shall be required unless the fact be denied by an affidavit with the answer, plea, or other pleading which puts it in issue. *Simmons* v. *Simmons*, 33 Gratt. 451, 458.

The general replication to the answer which set up the agreement releasing the trustee put in issue the question of whether

or not Mrs. Stewart was a *feme covert* when that agreement was signed by her.

A general replication, which alone is now used in equity, is a general denial of the truth of the defendant's plea or answer. Story's Eq. Plead., section 878; *Simmons* v. *Simmons, supra.*

Under the issue thus raised, it was clearly competent for Mrs. Stewart to prove that she was laboring under the disability of coverture when the alleged release was executed. At law, where the rules of pleading are more strict, and special replications are allowed, coverture may be shown under the general issue as well as under a special plea. 5 Rob. Pr. 225; 4 Minor's Inst. (2d ed., top pages), 684, 691.

Under the common law, which, in the absence of evidence to the contrary, is presumed to have been in force in the State of Pennsylvania when the release in question was executed, a married woman could not make a valid contract. 3 Minor's Inst. (2d ed.), 124.

If Mrs. Stewart was laboring under the disability of coverture when the release was executed, it was absolutely void. This, as we understand counsel for appellees, is not denied, but it is claimed that, although she was a married woman, she had all the rights of a *feme sole,* because at that time her husband was an alien enemy, being in the army of the Confederate States, then at war with the United States.

It seems to be settled in England that if a husband be banished or has abjured the realm, or is an alien who has always lived abroad, the wife can contract, sue and be sued as if she were a *feme sole.* 2 Kent's Com., side p. 154, &c.; Pollock on Cont., p. 61; 1 Minor's Inst. 367.

Some of the text writers, among them Mr. Minor and Mr. Reeves, state that another exception to the general rule that a married woman cannot contract, is where the husband is an alien enemy. 1 Minor's Inst. (4th ed.), 367; Reeves Dom. Rel. 140-1.

The case of *Derry* v. *Duchess of Mazarine* (1 Lord Raymond,

147; 1 Salk. 116), is relied on to sustain that view. Though it was mentioned in that case that the husband was an alien enemy, and had been divorced in France, yet, as Lord Loughborough said, the decision did not rest upon either of those grounds, but solely and properly on the ground that the wife lived in England on a fortune of her own, and separate from her husband, who had always resided abroad as an alien. 2 Kent's Com., side p. 155; 1 H. Blackstone, 349. It was afterwards held in *De Wahl* v. *Braume* (1 Hurl. & Norman, 178; 38 E. L. & Eq. 300), that a *feme covert* cannot sue alone on a contract made with her before or after marriage, though her husband is an alien enemy, one of the judges stating in his opinion that there was no authority for saying that an alien enemy was *civiliter mortuus.*

If it were conceded that the wife of an alien enemy, who lived in a foreign country, had the right to contract as if she were a *feme sole,* still we do not think that the mere fact that Mrs. Stewart resided in the State of Pennsylvania during the civil war, whilst her husband was in the army of the Confederate States, would affect their status or rights as husband and wife, especially since she went through the lines of the belligerents to visit her husband, and they have always, before, during, and since the war, fully recognized their marital relations.

It is insisted that, even if Mrs. Stewart is not bound by her deed of release as such, she is estopped from denying the act, as equity will not allow a married woman to do an act inducing another to pursue a line of action, and afterwards come into a court of equity and deny her power to perform it. When, and under what circumstances, a married woman will be considered as estopped by her conduct, it is unnecessary to consider in this case, for there is no evidence tending to show that Mrs. Stewart was guilty of any fraud, misrepresentation or concealment in what she did with reference to the release signed by her, or that the trustee did not have full knowledge of the fact

that she was a married woman and unable to release him from his duties and liabilities as trustee.

Neither are the appellants barred by *laches,* lapse of time, or acquiescence. The remaindermen, under the terms of the will creating the trust fund, are not entitled to the possession of any part of it until the death of the life-tenant, who was a party to this suit, and who, so far as this record shows, is still living. Until her death the appellants would have no standing in court except to ask a court of equity to prevent or remedy a violation of the trust, and to preserve the trust fund. They had the right to invoke the aid of a court of equity for those purposes, but they were under no legal obligation to do so, and the objection of laches or acquiescence will not lie for their failure to assert rights which have not yet accrued. *Effinger* v. *Hall,* 81 Va. 94; *Sedgwick's Curator* v. *Taylor,* 84 Va. 820.

By the will of the trustee, Mrs. Stewart is given one-half of the residue of his estate. This, it is insisted, satisfied her debt against him as trustee, if any such debt existed.

The general rule is that a legacy given by a debtor to his creditor, which is equal to or greater than the debt, is, in the absence of a contrary intention, deemed to be a satisfaction of the debt. Whilst this is the rule, the courts generally manifest a strong disinclination to enforce it, and permit slight circumstances to take a case out of its operation. *Crouch* v. *Davis,* 23 Gratt. 62. But there are exceptions to the rule as well established as the rule itself. One of these exceptions is that the presumption of satisfaction does not arise where the legacy is contingent, as it is in the case of residuary legatees, for it may possibly turn out that after all the claims against the testator's estate are satisfied, the bequest of the whole, or part, of his residuary estate, may not be equal to the amount of the legatee's debt. 2 Lomax's Executors (side page), 96; 2 Roper on Legacies (side page), 1047; Creswell on Executors, section 481; *Devese* v. *Pontet,* 1 Cox, 187, 192; *Nicholls* v. *Judson,* 2 Atkins, 330.

The legacy to Mrs. Stewart cannot be deemed as given in satisfaction of her claim against the trustee's estate.

Objections were made to the competency of certain witnesses when their depositions were taken, but those objections were not brought to the attention of the Circuit Court, nor passed upon by it. The objections cannot be considered by this court. A party who objects to the deposition of a witness, if he wishes to rely upon the exception, must bring it to the attention of the court below so that it may be passed upon by that court; and, unless the record shows that this has been done, the exception will be treated in the appellate court as waived. *Fant* v. *Miller & Mayhew,* 17 Gratt. 187; *Simmons* v. *Simmons,* 33 Gratt. 461; *Martin* v. *South Salem &c. Co.,* 94 Va. 28, 42.

It follows from what has been said that we are of opinion that the estate of the trustee, William C. Conrad, is liable for $4,806.25, being one-fourth part of the principal of the trust fund (less the $775 thereof paid out under the order of the Orphans' Court of the city of Philadelphia), payable at the death of the life tenant, Mrs. Edwards, to the parties who shall be entitled to the same at that time under the will of Mathew Conrad, deceased.

We are further of opinion that it does not satisfactorily appear that any part of the trust fund was used by the trustee in the purchase of the lands in Middlesex county of which he died seised and possessed.

The decree appealed from must be reversed in so far as it is not in accord with the view expressed in this opinion, and the cause remanded to the Circuit Court for further proceedings to be had not in conflict therewith.

*Reversed.*