# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## Ivey and Others v. Lewis and Others.

### June 15, 1922.

1. Former Adjudication or Res Adjudicata—*Same Subject Matter— Suit by Contingent Remaindermen to Conserve Corpus—Case at Bar.*— The instant suit was brought by complainants to recover posses- sion of land in which they had contingent remainders, which they claimed by reason of the happening of the contingency. Defendants alleged that complainants were barred by a decree in a previous suit relating to the same lands to which they were parties. This prior suit was brought by complainants before the happening of the contingency upon which their estates were to vest, and its object was the conservation and preservation of the *corpus* of the trust, so that the same should be forthcoming upon the happening of the contingency upon which their estates were to vest. Its object was to establish the rights of complainants as remaindermen and to cancel proceedings by which the land had been conveyed to defend- ants as clouds on the title of the trustee through whom they claimed. This prior suit was dismissed on the ground that the complainants had failed to show any ground for relief against the defendants.

   *Held:* That the decree in the prior suit barred the recovery of com- plainants in the present case.

2. Demurrers—*Overruling of Demurrer—Adjudication of Complainants' Right to Maintain Suit.*—Contingent remaindermen under a marriage settlement brought suit praying that decrees and orders in a former suit and conveyances of the property be declared null and void on account of being a fraud upon complainants as purchasers for valuable consideration, and for a decree directing a strict settlement according to the marriage contract.

   *Held:* That the overruling of the demurrer of the defendant in pos- session of the property to the complainants' bill was an adjudica- tion of the right of the complainants to maintain such a suit and to have relief therein if they established the case stated in their bill.

3. Remainders, Reversions and Executory Interests—*Contingent Remaindermen—Right of Contingent Remaindermen to Maintain Suit for Preservation of the Principal.*—The object of a bill brought by contingent remaindermen was the conservation and preservation of the principal of the trust subject so that the same should be

forthcoming upon the happening of the contingency that should determine the character of their estate, if any. The subject matter of the trust was land, but the object of the suit was to establish title to the land in the trustee under a marriage agreement and the rights of the complainants therein as remaindermen, and to cancel proceedings in a former suit as clouds on the title of the trustee through whom complainants claimed.

*Held:* That the contingent remaindermen can maintain such a suit.

4. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Contingent Remaindermen—Waste.*—As a contingent remainderman has no vested interest in the property, he cannot maintain a common-law action to recover waste or damages in the nature of waste. But in equity contingent remaindermen may maintain a suit to enjoin waste being done or threatened upon the principal estate.

5. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Suits by Contingent Remaindermen.*—The reason why a contingent remainderman in fee may enjoin threatened waste is because waste is a partial diminution of that which may become his, and upon the same principle he may apply to a court of equity for the preservation and conservation of the whole of the principal which is threatened with loss or destruction by reason of the improper conduct of the life tenant.

6. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Suits by Contingent Remaindermen—Remainderman Bound by Results of Litigation.*—While it is not necessary for a contingent remainderman in fee to bring suit to compel the restitution of misappropriated funds, if he does so, he will be bound by the results of the litigation.

7. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Suits by Contingent Remaindermen—Remainderman Bound by Results of Litigation—Case at Bar.*—So in the case at bar, while it was not necessary for the complainants, contingent remaindermen, to have brought a prior suit, before the happening of the contingency upon which their estates were to vest, to have the *corpus* restored to the trustee under the marriage settlement under which they claimed as contingent remaindermen, and to remove the clouds on the trustee's title occasioned by the proceedings in a former suit, yet having done so, they were bound by the result thereof.

8. FORMER ADJUDICATION OR RES ADJUDICATA—*When Decree in One Suit Constitutes a Bar to Another Suit.*—A prior suit brought by the complainants in the present case was one that the complainants had the right to bring. The court in which it was brought was a court of general jurisdiction, and had jurisdiction of suits of that character. The court acquired jurisdiction of both the subject matter and the parties, and the suit was proceeded in in the usual and regular manner to a final decree.

*Held:* That the adjudication in this prior suit was, therefore, binding on complainants.

9.   FORMER ADJUDICATION OR RES ADJUDICATA—*Necessity of Adjudication in Prior Suit of the Very Question Involved in Subsequent Suit—Suits by Contingent Remaindermen—Case at Bar.*—In the instant case, a suit to recover possession of land by contingent remaindermen upon the happening of the contingency upon which their estates were to vest, defendants alleged that complainants were barred by a decree in a prior suit brought by complainants before the happening of the contingency upon which their estates were to vest, to conserve the principal of the trust, and to declare certain proceedings and deeds under which defendants claimed the land in question null and void.   Counsel for complainants contended that there was no adjudication in the prior case of the question involved in the present case because it might have been decided on the ground that complainants as contingent remaindermen had no right to maintain the suit.   The final decree in the prior case dismissed complainants' bill because the court was of opinion that complainants had failed to show any ground of relief against defendants.

   *Held:*   That when the bill, exhibits, answer and other papers upon which the prior suit was heard are read in connection with the decree, it could not be doubted that the decree was an adjudication against the complainants upon the only issue made by the pleadings in that cause, which was the validity of the proceedings by which defendants acquired title to the land in controversy.

Appeal from a decree of the Law and Equity Court of the city of Richmond.   Decree for defendants. Complainants appeal.

                                        *Affirmed.*

The opinion states the case.

*Scott & Buchanan*, for the appellants.

*Charles T. Lassiter*, *Timothy Rives* and *William Earl White*, for the appellee.

BURKS, J., delivered the opinion of the court.

[1] This suit was brought by the appellants to recover possession of 68½ acres of land in Prince George county in which they had contingent remainders, and which they now claim by reason of the

happening of the contingency upon which their estates were to vest in possession. They are entitled to recover unless barred by decrees in previous suits relating to the same lands to which they were parties. The trial court was of opinion that they were so barred and dismissed their bill, and from the decree dismissing the bill this appeal was allowed.

The appellants, who were the complainants in the trial court, are the only surviving children of Therina .M. Ivey, whose maiden name was Therina M. Heath. On January 27, 1858, when Therina M. Heath, an infant, was about to intermarry with George W. Ivey, they entered into a marriage agreement which was signed and sealed by both of them, and duly admitted to record, whereby, amongst other things, in consideration of the intended marriage, she conveyed the said tract of land to Joseph H. Johnson upon the following trusts:

(1). That after their intended marriage, the said George W. Ivey shall have and possess all the property belonging to the said Therina M. Heath except certain cash and bonds which she may possess at the time and receive the profits thereof during the coverture of the said George W. Ivey and the said Therina M. Heath to his own proper use, and

(2). That at the death of the said Therina M. Heath the said Joseph H. Johnson, trustee, shall deliver the property hereinbefore named to such person or persons as the said Therina M. Heath shall designate by will or other instrument of writing disposing of the property, and

(3). In the event that she leaves no will or other instrument of writing disposing of said property, then and in that event it is to be delivered to the heirs at law of the said Therina M. Heath.

(4). That should the said Therina M. Heath have any child or children by virtue of her intermarriage with the said George W. Ivey, and shall die leaving such child or children and the said George W. Ivey alive at her death, then and in that event the said George W. Ivey shall hold and possess and receive the benefit of said property for himself and said children, and at the death of the said George W. Ivey the property is to be delivered to said child or children, to them and their heirs forever.

(5). It is also further agreed "That said George W. Ivey and the said Therina M. Heath shall have the power during the coverture, by a writing acknowledged before two witnesses, to order the sale of any portion or all of said property by the said trustee, or to exchange it for other property, but the property or other consideration received from such sale or exchange shall be held by said trustee subject to all the conditions and restrictions which are herein set forth."

(6). The said property to be "in no way or manner subject or liable to the payment of any of the debts which the said George W. Ivey may at this time owe or which he may hereafter contract."

The marriage was duly had and solemnized. Five children were born of the marriage, but at the time of the death of Therina M. Ivey, the complainants were her only surviving children and heirs at law, and she left no will or other instrument disposing of said property. George W. Ivey, the husband and father of the complainants, died on July 2, 1915. At that time Joseph H. Johnson, the trustee, was dead, and his estate had been committed to J. H. Mercer, sheriff of the city of Richmond. The land was then in the possession of John W. Lewis, who claimed through mesne conveyances under the deed of trust

executed in 1872, and a further conveyance executed in 1877, hereinafter mentioned.

By deed bearing date January 29, 1872, George W. Ivey and Therina M., his wife, conveyed the land to R. H. Jones, Jr., and George S. Bernard, trustees, to secure the payment of a note made by George W. Ivey and endorsed by Samuel Stevens, for $110.00, with interest at 10 per cent. per annum, held by the First National Bank of Petersburg. By deed bearing date March 15, 1877, duly acknowledged and admitted to record, George W. Ivey and Therina M., his wife, and R. H. Jones, Jr., and George S. Bernard, trustees, in consideration of four hundred dollars paid by the purchaser to George W. Ivey conveyed the land to B. B. Brooks. Thereafter Brooks applied to Johnson, trustee in the marriage agreement of 1858, to execute to him a deed for whatever interest he, the said trustee, had in the property, but Johnson refused to do so. Thereupon, on October 30, 1877, Brooks instituted suit in chancery in the Circuit Court of the city of Petersburg, against George W. Ivey and Therina M., his wife, and Robert H. Jones, Jr., and George S. Bernard, trustees, J. H. Johnson, trustee, and Anna Ivey, Emmett Ivey, Richard Ivey and Charles Ivey, the last four being infants, and the only children of George W. and Therina M. Ivey, for the purpose of perfecting his title to said land.

The bill set out:

(a). The marriage agreement between George W. Ivey and Therina M. Heath, and the conveyance of the property in question accordingly by the deed of 1858, above referred to, the provisions thereof being set out somewhat at length.

(b). That said Ivey and Therina M. Heath were duly married, and the children above mentioned were issue of the marriage.

(c). That George W. Ivey and his wife had, by the deed of January 29, 1872, conveyed the property to Jones and Bernard, trustees, for the purposes set out in that deed, and that default having been made in the payment of the debt secured therein, George W. Ivey and wife being anxious that the said debt·should be paid off, the trustees, Jones and Bernard, with the concurrence of Ivey and wife, had made sale of the property to Brooks for the sum of $400.00 and had conveyed the property to said Brooks as set out in the deed of March 15, 1877, above mentioned.

(d). That said last mentioned deed had been acknowledged before two magistrates by George W. Ivey and Therina, his wife, and duly admitted to record.

(e). "That your complainant has been advised that he has the right to ask the assistance of this honorable court to perfect his title to the real estate aforesaid by compelling the said trustee to convey to him whatever interest he may have in said property."

The prayer of the bill was that the court would compel Johnson, trustee, to execute a deed to Brooks conveying whatever interest he might have in the real estate referred to, and for general relief. Johnson, trustee, appeared and answered the bill at length, and objected to the execution of the deed on the ground that the sale was not authorized under the powers conferred by the marriage settlement of 1858. The cause was heard on the bill, the answer of Johnson, trustee, the general replication thereto, the answer of the infants by their guardian *ad litem*, and on the depositions of the witnesses. There was no appearance for Ivey and wife and the bill was taken for confessed as to them. The decree entered thereon in May, 1878, recited:

(1). That the tract of land in question was purchased by Brooks for $400.00, which sum was the fair value of said land, and that said Brooks had expended in improvements thereon not less than $400.00.

(2). That Ivey and wife are entitled to a life estate in said land, and under certain circumstances an absolute estate therein, and having joined in the deed to Brooks and received the purchase price, had parted with all their interest in said land.

(3). That the court is advised that the trustee, Johnson, had no funds with which to redeem the land, and that Ivey and wife and their children are in necessitous circumstances, and that Brooks is willing to pay Johnson, the trustee, $100.00 for the use and benefit of the children, in consideration of the execution by Johnson, trustee, of a deed conveying said land to him with special warranty.

(4). That the court is of opinion that the proposal is a fair and just one and a reasonable compensation to the infant defendants for all probable losses by reason of the sale of the land by Ivey and wife to Brooks.

After making the foregoing recital the decree continues as follows:

"The court doth adjudge, order and decree that B. B. Brooks, the plaintiff, pay to J. H. Johnson, trustee, as aforesaid, the sum of one hundred dollars with interest from June 1, 1878, upon the delivery to him by said trustee of a deed with special warranty for the land in these proceedings mentioned, said deed to recite the fact that it is so executed by the order of the court in this cause; and the court doth further order that the said Johnson, when he shall have received the money aforesaid, after paying expenses incurred by him to his counsel, pay over the balance

9

to the said George W. Ivey and his wife to be expended by them in the support and the maintenance of the infant defendants, their children, taking their receipt for the same and filing it with the papers in this cause. And it appearing that nothing further remains to be done in this cause it is ordered to be removed from the docket, reserving leave to any party in interest to have the same reinstated for cause on petition."

It will be observed that under this decree Brooks was required to pay $500.00 for the land although the contract price was only $400.00, and of this $500.00 the sum of about $175.00 was necessary to pay off the debt secured by the deed of 1872, thus leaving a residue of about $325.00 which after the payment of costs went into the hands of George W. Ivey.

Johnson either failed or refused to accept the $100.00 and execute the deed required by the decree, and died without ever having executed the same. On June 3, 1879, Brooks filed a petition in the cause reciting the death of Johnson since the final decree, without having executed the deed, and praying that a new trustee be substituted in his place. A rule was made against Ivey and wife and the guardian *ad litem* of the infants to show cause why a suitable trustee should not be substituted in the place of Johnson, but no process was taken against the personal representative of Johnson. On the return of the rule executed, the court substituted W. R. McKenney in the place of Johnson as trustee under the marriage agreement of 1858. McKenney accepted the $100.00, carried out the decree of the court, and executed a deed to Brooks by which he undertook to convey with special warranty whatever contingent interest the infants above mentioned then had or might thereafter acquire in and to the land in question. The case was thereupon dismissed from the docket.

It is earnestly insisted on behalf of the appellants that all of the proceedings in this suit were null and void. The appellee insists that the proceedings in said suit are not void and suggests, among other things, that the deed of trust of 1872, creating a mortgage on the land, was a repudiation of the contract of settlement made by Mrs. Ivey while she was an infant, and that she had a right to repudiate it. At all events, that the decree entered in the case cannot be held to be void. The trial judge says with reference to the decree in that cause that "The adjudication may have been erroneous, but it was made upon the pleadings, and upon evidence taken, therefore could it be corrected except by appeal? Neither the trustee nor the guardian *ad litem* appealed, and as it seems to me the decree of the court was not void, I do not think it can be assailed collaterally. A court of equity should be alert to protect the interests of infants, but infants properly made parties are bound by valid adjudications of their rights, with the reservations allowed in their favor by statute. *Harrison* v. *Walton's Ex'r*, 95 Va. 721, 30 S. E. 372, 41 L. R. A. 703, 64 Am. St. Rep. 830."

In the view we take of the second suit to be hereinafter referred to, it is unnecessary to pass upon whether or not the proceedings in the foregoing suit were void or merely voidable.

After the termination of the foregoing suit Brooks conveyed the land in controversy to F. J. Cech by deed dated March 14, 1891, and Cech by deed bearing date January 29, 1892, conveyed the same land to W. W. Townes. In the year 1892, sometime before the death of either Therina M. Ivey or George W. Ivey, the same persons who are the complainants in the case in judgment, filed their bill in the Circuit Court of

Prince George county against George W. Ivey and Therina M. Ivey, Jones and Bernard, trustees in the deed of 1872, W. R. McKenney, the substituted trustee in the place of Johnson, and B. B. Brooks and his alienees above mentioned. At the time of the institution of this suit W. W. Townes was in possession of the land claiming it as owner in fee under a conveyance from Brooks. The bill sets out:

(1). The marriage contract between George W. Ivey and Therina M. Heath and the deed pursuant thereto of January 27, 1858, above set out, which it is averred vested them with an estate in fee in said land.

(2). The conveyance thereof on January 29, 1872, by Ivey and wife to Jones and Bernard, trustees, to secure a debt of George W. Ivey, and the subsequent deed of March 15, 1877, to Brooks for the sum of $400.00 above mentioned, which it was averred was unconscionably small and less than one-fifth of the true value of the land.

(3). The suit subsequently brought by Brooks in the Circuit Court of Petersburg against Johnson, trustee, and Ivey and others, the proceedings therein as above set out.

(4). The payment by Brooks of $100.00 to McKenney, the substituted trustee, of which there remained after the payment of charges the sum of $43.55, which was paid George W. Ivey.

The bill avers that the proceedings aforesaid were irregular, fraudulent and void as to the children of Therina M. Heath, who, it is again alleged, had a vested fee simple estate in the property.

The prayer of this bill was:

"Your orators do humbly and especially pray that, all decrees and orders heretofore made in favor of B. B. Brooks and the conveyance made by George W.

Ivey and wife, to Jones and Bernard, trustees, and all subsequent conveyances *to* George W. Ivey and wife to Jones and Bernard, trustees, to B. B. Brooks, and W. R. McKenney, sub. trustee, to Brooks and B. B. Brooks and wife, to F. J. Cech, and F. J. Cech and wife, to W. N. Ragland, and F. J. Cech and wife, to W. W. Townes, be set aside and to be declared null and void on account of being a fraud upon the children as purchasers for a valuable consideration and to decree a strict settlement according to the marriage contract and the manifest intention of the marriage contract.

"Your orators further pray that the honorable court decree that B. B. Brooks do pay a rental for the use and profit of the property for the space of the occupancy.

"Also that he pay unto your orators a compensation for all waste and destruction which he occasioned while occupying the premises, to the detriment and injury of your orators. That your orators may have all such further and general relief in the premises as the nature of their case may require or to equity may seem meet."

Townes demurred to this bill and his demurrer was overruled by an order entered in the cause February 13, 1893. Brooks and Townes also filed separate answers upon which proof was taken, and the cause came on to be heard upon these answers, general replication thereto and the depositions. No decree was entered in the cause until December, 1898, at which time Charles E. Ivey, who was an infant when the suit was brought, was of the age of twenty-three years. The final decree entered in the cause in December, 1898, was as follows:

"This cause came on this day to be further heard

upon the papers formerly read, upon the answer of W. W. Townes, and the answer of B. B. Brooks, heretofore filed in said cause; with general replication to said answers, and upon the depositions and other evidence duly taken and filed in said cause and was argued by counsel.

"On consideration whereof, the court is of opinion that the plaintiffs have failed to show any ground of relief against the defendants, or either of them, and doth adjudge, order and decree that the bill of the plaintiffs be dismissed and that they pay the defendants their costs by them about their defence in this behalf expended.

"But, on motion of the plaintiff by counsel, it is ordered that this decree be suspended for ninety days upon plaintiff giving bond in the penalty of $100.00, as required by law, in order that the plaintiff may present a petition for an appeal from this decree if they so desire."

It is earnestly insisted by counsel for the appellants (1) that at the time the suit of 1892 was brought the interests of the appellants were purely contingent and that they had no right to maintain such a suit, and that the subject matter of that suit was not the same as that involved in the suit in judgment, and (2) that it does not appear that the rights of the complainants in that suit were adjudicated upon their merits.

[2] The prayer of the bill in the suit of 1892 was that all decrees and orders theretofore made in the former suit in favor of B. B. Brooks and the conveyance made by George W. Ivey and wife to Jones and Bernard, trustees, and the subsequent conveyances by George W. Ivey and wife and Jones and Bernard, trustees, to B. B. Brooks and W. R. McKenney, sub. trustee to

Brooks, and the conveyances made by Brooks and wife to others down to the defendant Townes, be set aside and declared null and void on account of being a fraud upon the appellants as purchasers for valuable consideration, and for a decree directing a strict settlement according to the marriage contract, and for an accounting of waste and rents and profits, and for general relief.

The overruling of the demurrer of the defendant Townes to the complainants' bill was an adjudication of the right of the complainants to maintain such a suit and to have relief therein if they established the case stated in their bill. The bill stated that the complainants therein held vested remainders in the land, but the marriage settlement was filed as an exhibit therewith and the derivation of the complainants' title therefrom was set forth in the bill, and it is conceded by counsel on both sides that the remainders were contingent. Under these circumstances it is now contended by counsel for the appellants that "said complainants had no existing estate in the land and no present right of action for the correction of the wrongs complained of, if indeed the acts complained of constituted wrongs. In other words, it is clear that the complainants in *Ivey et als.* v. *Ivey et als.* (the suit of 1892) had no cause of complaint or right of action *at that time.*"

[3] In this contention we cannot concur. It seems plain that the object of the bill was the conservation and preservation of the principal of the trust subject so that the same should be forthcoming upon the happening of the contingency that should determine the character of their estate, if any. It is true that the subject matter of the trust was land which could not get away, but the object of the suit was to establish

title to the land in the trustee under the marriage agreement and the rights of the complainants therein as remaindermen, and to cancel the proceedings in the former suit as clouds on the title of the trustee through whom they claimed. No authority is cited for the proposition that contingent remaindermen cannot maintain such a suit.

[4] It seems to be well settled that contingent remaindermen may maintain a suit to enjoin waste being done or threatened upon the principal estate. *Perot* v. *Perot*, 3 Atk. 94, 23 Eng. Reprint 857; *Birch-Wolfe* v. *Birch*, 9 L. R. Eq. 683; 1 White & Tudor, L. C. 989; *University* v. *Tucker*, 31 W. Va. 621, 8 S. E. 410; *Williamson* v. *Jones*, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; *Latham* v. *Roanoke R. Co.*, 139 N. C. 9, 51 S. E. 780, 111 Am. St. Rep. 764; 40 Cyc. 528, and cases cited in note 19.

As a contingent remainderman has no vested interest in the property he cannot maintain a common law action to recover waste or damages in the nature of waste, but "the rights of a contingent remainderman are much more extensive in equity than at law, for while he will not be allowed to recover damages for that which may not be his, he should be allowed to prevent the destruction of that which may become his." 16 Cyc. 658. This statement of the text is quoted with approval in *Canada* v. *Daniel*, 175 Mo. App. 55, 157 S. W. 1032.

In *Watson* v. *Wolff-Goldman Realty Co.*, 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912a, 540, cited with approval in *Evans* v. *Pettus*, 112 Ark. 572, 166 S. W. 955, 958, it is said: "It is a rule of universal application that a contingent remainderman may obtain relief in equity by injunction to prevent waste, and this remedy is given him on the theory that he is entitled to prevent

the loss or destruction of that which may become his at the termination of the life estate."

In 1 Daniell's Ch. Pl. & Pr. (4th ed.) 316, in discussing suits which may or may not be brought by a contingent remainderman, it is said: "But it must not be supposed that contingent remaindermen can in no case be plaintiffs; for in many cases (such as suits for the administration of, or to secure, the trust property to which they are contingently entitled) such persons may properly be plaintiffs and orders have been made at the suit of such persons for the payment of trust funds into court."

The prayer of the bill, amongst other things, is for an accounting for waste and for rents and profits. Clearly, the complainants could have no accounting for rents and profits, as these belonged to the life tenants who had parted with them, and in no event were the complainants entitled to them. As to the waste, there were no allegations in the bill that any waste was being done or threatened, and in the absence of such allegation there could be no recovery therefor. The allegations of the bill are confined to the proceedings in the former suit and what was done in derogation of the complainants' rights under the marriage settlement, and that the land had been sold to Brooks at a grossly inadequate price.

[5–7] The reason why a contingent remainderman in fee may enjoin threatened waste is because waste is a partial diminution of that which may become his, and upon the same principle he may apply to a court of equity for the preservation and conservation of the whole of the principal which is threatened with loss or destruction by reason of the improper conduct of the life tenant. It is not necessary for a contingent remainderman in fee to bring suit to compel the

restitution of misappropriated funds and he will not be guilty of laches if he fails to do so before his estate vests, but if he does so, he will be bound by the results of the litigation. So in the case in judgment, it was not necessary for the complainants to have brought the suit of 1892, but having done so they are bound by the results thereof. The suit of 1892 was in effect a suit to have the lands restored to the trustee under the marriage settlement, and to remove the clouds on his title occasioned by the proceedings in the former suit. *Sedgwick* v. *Taylor*, 84 Va. 820, 6 S. E. 226, was in many respects similar to the case in judgment. In that case a house and lot in the town of Manchester was conveyed to a trustee upon trust to permit Martha Taylor to have free and undisturbed possession and take to her use the rents and profits thereof during her natural life, and after her death the property was to be held by the trustee for the benefit of all the children of Mrs. Taylor by her then husband, who might be living at her death, and the heirs of such as might have died during her lifetime leaving issue. The trustee was also authorized to convert the land into money or other property "to be held as aforesaid." The property was subsequently sold by the trustee under authority of the deed of settlement and constituted the fund in controversy. The trustee, from time to time, paid over to the life tenant different portions of the purchase money until he paid her the whole amount for the maintenance and support of herself and infant children. It was conceded that the remainder in the children after the death of Mrs. Taylor was a contingent remainder. That suit was brought by the only surviving child of Mrs. Taylor and during her lifetime. The object was to have an accounting from the estate of the trustee who had

died, and the restoration of the principal of the trust fund for the use of the son in the event that he should survive his mother. As Mrs. Taylor was entitled to the use of the fund during her lifetime, and the whole of it had been paid to her, of course she could not demand the interest on the fund during her life, nor could the son, because he was not entitled to it. But it was held that the son, although his remainder was contingent, could maintain the suit and that an accounting and restitution would be ordered. In the course of the opinion it is said: "The life tenant is still living; and the interest in remainder, under the trust deed, being contingent, the right to demand payment of the principal fund has not yet accrued. It was competent, however, for the male appellee to maintain a suit to have the fund collected and his interest protected."

In *Stewart* v. *Conrad*, 100 Va. 128, 135, 40 S. E. 624, 627, it was said: "The remaindermen, under the terms of the law creating the trust fund, are not entitled to the possession of any part of it until the death of the life tenant, who was a party to this suit, and who, so far as this record shows, is still alive. Until her death appellants would have no standing in court except to ask a court of equity to prevent or remedy a violation of the trust and to preserve the trust fund. They had the right to invoke the aid of a court of equity for those purposes, but they were under no legal obligation to do so, and the objection of laches or acquiescence will not lie for their failure to assert rights which have not yet accrued. *Effinger* v. *Hall*, 81 Va. 94; *Sedgwick* v. *Taylor*, 84 Va. 820, 6 S. E. 226."

*In Ford* v. *Hurt*, 127 Tenn. 557, 155 S. W. 927, there was a devise of lands to one Mary A. Ford for her life, and "at the death of Mary A. Ford to be equally

divided among said children or representatives of them, as she may leave surviving her, and should she leave no child or children, or the representatives of them surviving her, then the said property is to return to my heirs or distributees." The bill alleged that the defendant, Hurt, had purchased of the life tenant her estate and that the parents of the complainants (now deceased) joined in the execution of the deed of conveyance to her. It further alleged that in order to defeat complainants in their rights Hurt had purposely allowed the land to be sold for taxes, which he should have paid, and had caused the property to be purchased at the tax sale by his codefendant who was his relative and agent. The bill, among other things, prayed for setting aside of the tax title aforesaid. The defendants demurred to the bill on the ground, among others, that complainants were not vested with such an interest in the land as qualified them to maintain a bill of complaint in that their interest is but a contingent one, a possible or probable one, that may never ripen into title to the lands. But it was held that the bill was maintainable although the complainants were only contingent remaindermen. It was said, further, "certainly this should be the rule in this State where the doctrine obtains that such a remainder, though contingent, presently vests in the described class as a class  *  *  *  and complainants as the only existing representatives of the class that may take, should be allowed to protect the estate so vested, whether they or others responding to the class at the death of the grandmother, Mary A. Ford, shall actually take under the will."

[8] The suit brought in 1892 was one that the complainants therein had the right to bring. The court in which it was brought was a court of general

jurisdiction, and had jurisdiction of suits of that character. It acquired jurisdiction of both the subject matter and the parties, and the suit was proceeded in in the usual and regular manner to a final decree. The adjudication was, therefore, binding on the parties thereto.

[9] But it is earnestly insisted by counsel for the appellants that there was no adjudication of the case on the question involved in the case in judgment, that it may have been decided on the ground that appellants had no right to maintain the suit and that the burden is on the appellee to show that the question here involved was there decided.

There has been a want of harmony in the decisions of this court and also of the Supreme Court of the United States as to whether the first suit concludes all questions which might have been decided under the pleadings in that case or is restricted to the points actually decided. This subject is discussed and the cases cited by the author of this opinion in 3 Va. Law Reg. 273, but it is not necessary to pass upon it in the present case. For if it be conceded that the doctrine of *Chrisman* v. *Harman*, 29 Gratt. (70 Va.) 494, 26 Am. Rep. 387 (that the precise question must have been raised and determined in the former suit) should be adhered to, the appellants have not brought themselves within the rule there laid down.

A lengthy extract is made from the brief of counsel for the defendants in that suit to show that the case went off on the ground of the inability of the complainants to maintain that suit, but we do not attach great importance to that fact, as the courts often have to base their conclusions on different grounds from those assigned by counsel, and the overruling of the demurrer of the defendant Townes to the complainants' bill was

an adjudication of the right of the complainants to maintain the suit. The final decree in the case, as we have seen, dismissed the bill at the complainants' costs because the court was of opinion "That the plaintiffs have failed to show any ground of relief against the defendants, or either of them."

The answer of Brooks filed in the cause denied any title or interest, vested or contingent, in the complainants in that suit. When the bill and exhibits, and the answer aforesaid, and other papers upon which the cause was heard, are read in connection with the decree aforesaid, we cannot doubt that the decree was an adjudication against the complainants in that suit upon the only issue made by the pleadings in the cause, which was the validity of the proceedings by which Brooks acquired title to the land in controversy. This was manifestly the view of the counsel for the complainants at that time, as the decree shows that its operation was suspended to enable the complainants to take an appeal. Certainly, the proceedings in that suit were not void, and cannot be collaterally assailed. Seven years thereafter, to-wit, on the 6th day of April, 1905, Townes sold and conveyed the land to John W. Lewis, the appellee.

We are of opinion that the decree last aforesaid is a bar to the present suit of the appellants, and, hence, the decree of the Law and Equity Court of the city of Richmond is affirmed.

*Affirmed.*

SIMS, J., dissenting:

I find myself unable to concur in the majority opinion, or in its conclusion.

As it is well settled that a court of equity has no inherent jurisdiction to sell infants' lands, but only

when the proceedings are in substantial accord with the statute on the subject; and as the proceedings in the first suit mentioned in the opinion made no approach to conformity with the statutory requirements; the bill, although recognizing the existence of the trust, and so of the interests of the infants, did not even ask for a sale of those interests; the decree undertook to sell such interests without any pleading, even asking that that be done; it seems manifest that the decree in that suit under which the interests of the appellants were attempted to be sold and conveyed was absolutely void, and, hence, so was the deed of conveyance thereunder. *Coleman* v. *Va. Stave Co.*, 112 Va. 61, 70 S. E. 545; *Brenham* v. *Smith*, 120 Va. 30, 90 S. E. 657.

With respect to the second suit, this only need be here said:

It is true, in view of what is the correct construction of the marriage settlement which is filed as an exhibit with the bill and made a part thereof, it may be said that the bill on its face showed that the interests of the complainants were contingent interests. The suit was instituted and the final decree therein was entered while the life tenant was still living and many years before the interests of the complainants became vested interests. But the bill alleged that the interests of the complainants were vested remainders in fee, and not contingent interests; it was expressly stated that the improvements made upon the property had "had no tendency to diminish in value in the smallest degree nor lessen the interests of the" (complainants); and all of the relief sought was present relief to which it was claimed that the complainants were entitled "as purchasers for a valuable consideration" having then-existing interests. This was the particular claim or

demand which was made by the bill, and which alone,
so far as the record shows, was litigated in that suit.
No issue was tendered by the bill of any right or need
of preservation of the *corpus* for the future enjoyment
of any persons having a contingent interest therein.
The order overruling the demurrer to the bill does not
specify the grounds on which that action was taken,
and so cannot be considered as embodying the view
of the court that it had and would take jurisdiction
of the case, even if the complainants had merely a
contingent estate.   The natural inference is that the
court in overruling the demurrer did not determine
that question at all and merely reserved its decision
of all questions presented by the bill until the other
pleadings and the proof were all in.   Certainly that
order was not a final judgment or decree, and, hence,
cannot be considered as in bar of any of appellants'
rights.   And when we come to the final decree, we
see that the cause was brought on "to be further heard
upon the papers formerly read, upon the answers   *   *
heretofore filed   *   *   with general replication to said
answers and upon the depositions and other evidence
duly taken and filed in said cause, and was argued
by counsel."   Thereupon the decree of the court was
as follows: "On consideration whereof, the court is
of opinion that the plaintiffs have failed to show any
ground of relief against the defendants, or either of
them," and dismissed the bill.   When this decree is
read in the light of the pleadings, it does not appear
that the court ever took jurisdiction of the subject
of the preservation of the *corpus* in order to protect
the interests of any contingent estate therein.   Indeed
the inference seems irresistible that the court dismissed
the bill on the ground that the complainants failed to
show any vested interests, such as were asserted in
the bill, and, hence, failed to show any ground of

relief against the defendants, such as was sought by the bill. This being true, it seems plain that that cause was disposed of on a ground which did not go to the merits of the suit in which the decree under review was entered, and, therefore, is no bar to the relief sought in the latter suit. *Chrisman* v. *Harman,* 29 Gratt. (70 Va.) 494, 26 Am. Rep. 387; *Withers* v. *Sims,* 80 Va. 651; *Dillard* v. *Dillard,* 97 Va. 434, 34 S. E. 60; *Taylor* v. *Hedrick,* 110 Va. 461, 66 S. E. 65; *Hairston* v. *Hairston,* 117 Va. 207, 84 S. E. 15; *Bayly* v. *Curlette,* 117 Va. 253, 84 S. E. 642; *Steinman* v. *Clinchfield Coal Co.,* 121 Va. 611, 93 S. E. 684; *Payne* v. *Buena Vista Co.,* 124 Va. 313, 98 S. E. 34.

Whatever may be the correct ruling with respect to what matters are concluded by a preceding suit which may have been but were not in fact presented for decision, all of the authorities concur in the view that only such matters are thus concluded, against the complainant in a preceding suit, which were "presented or presentable to sustain the *particular demand litigated in the prior suit.*" *Legrand* v. *Rixey,* 83 Va. 862, 3 S. E. 864; *Withers* v. *Sims, supra* (80 Va. 651, 660–1); *Dillard* v. *Dillard, supra* (97 Va. 434, 437, 34 S. E. 60); and other cases cited in note 3 Va. Law Reg. 273, *et seq.* And, as we have seen, "the particular demand" in the prior suit which we have under consideration was not the demand involved in the present suit but a wholly different one. Then, too, the demand in the present suit is one which admittedly the appellants had the right to delay in making until their estates became vested. Hence, they violated no rule of procedure whatever when they did not put in issue or litigate that demand in the prior suit, which was instituted and decided at a time when the estates were contingent. Therefore, no estoppel can arise from that circumstance.