COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia


KOSITZKA, WICKS AND COMPANY,
 BY AND THROUGH BRENDA E. CURTIS,
 IN HER CAPACITY AS DESIGNATED
 TRUSTEE, ON BEHALF OF THE CORPORATION,
 OF THE KAZUKI KUKITA PRICE TRUST

                                              MEMORANDUM OPINION* BY
v.        Record No. 1653-23-4            JUDGE MARY BENNETT MALVEAUX
                                                JANUARY 21, 2025
ALFRED C. FICK, AS PERSONAL
 REPRESENTATIVE OF THE ESTATE
 OF EDWARD JOSEPH RYAN, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

J. Brandon Sieg (Stephan F. Andrews; James W. Walker; Melisa
Azak; O'Hagan Meyer, PLLC, on briefs), for appellant.

David E. Bateman (Daniel M. Rathbun; Rathbun Bateman, P.C., on
brief), for appellee Alfred C. Fick, as Personal Representative of the
Estate of Edward Joseph Ryan.

No brief or argument for appellees David Andrew Price, David
Andrew Price, as Executor of the Estate of Kazuko Kukita Price, and
Lee Grayson Dewberry, a minor, by his mother and next friend,
Christine E. Price.


Kositzka, Wicks and Company ("KWC") appeals the circuit court's final order finding that

it breached its fiduciary duty to Edward Joseph Ryan and ordering it to pay the Ryan estate

$999,050 in damages, attorney fees, and costs. On appeal, KWC argues that the circuit court erred:

(1) by interpreting Code § 64.2-793 to allow damages against it where the statute allows damages

only to restore the value of missing trust property or distributions; (2) in concluding that the Ryan

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

estate, as a contingent beneficiary, could recover legal damages against KWC; (3) by holding it liable for breach of fiduciary duty based on its failure to pay proceeds from the sale of a home to Ryan; (4) by finding that it owed a fiduciary duty to avoid operation of the predeceased beneficiary provision against Ryan; (5) in holding it liable for breach of fiduciary duty based on its determination that there was no evidence of Ryan or his attorney-in-fact's knowledge or opportunity to protect Ryan's interests as a trust beneficiary; (6) in admitting the expert testimony of Joseph Stuart and then relying on Stuart's opinion testimony to change the court's prior interpretation of the trust instrument; and (7) in awarding attorney fees to the Ryan estate. For the following reasons, we affirm the decision of the circuit court.

## BACKGROUND

### I. The Trust

At issue in the instant case is the administration of the estate plan of Dr. Kazuko Kukita Price, who died on April 7, 2017. Dr. Price's will stated that her husband was deceased and identified her two children, David Andrew Price and Christine E. Price. It also named David as executor of the will. Dr. Price had a pour-over will which provided that all of her property at her death would be distributed to the trustee of the Kazuko Kukita Price Revocable Living Trust ("the trust"). KWC was named as the trustee of the trust.

The trust's structure provided that, upon Dr. Price's death, the trust funds were to be divided into two categories: Share A and Share B. Share A contained specific monetary distributions to specific individuals. Share B was the residual, to be distributed to charitable organizations after payment of Share A, taxes, and other expenses.

Dr. Price's trust was amended five times. The trust's subsequent amendments repeatedly adjusted who would receive money from the trust, and how much. Relevant here, the fifth and final amendment to the trust provided that Share A was to consist of $1,250,000, and that David

would receive $250,000 and Dr. Price's companion, Edward Joseph Ryan, would receive $1 million "to provide for his health and welfare." Dr. Price had completely disinherited her daughter Christine in the third amendment to the trust, and reaffirmed her intention to disinherit Christine in all subsequent amendments.

In addition, a provision concerning Dr. Price's house was included in the final amendment. It gave Ryan the right to use and enjoy Dr. Price's "home at 4217 Peach Tree Place, Alexandria, VA for a period of time not to exceed five years from" Dr. Price's death, with the trust paying "the expenses of utilities, insurance, real property taxes, and maintenance." That provision further states,

> Special Instructions for funding: should my companion Edward Joseph Ryan avail himself of this residency period, then I hereby instruct my Trustee to reserve a discretionary amount of Share B from immediate distribution to fund properly the expenses provision of this Paragraph G. Upon the termination of this living arrangement, either by my companion's death or voluntary vacation of the premises, then the trustee may sell my residence and distribute those funds, along with any remaining expense funds, as the final portion of Share B and in accordance with the terms of Share B.

The original trust document contains a predeceased beneficiary provision, which states, "If any of the beneficiaries under this article should die before the trust assets have been distributed to them, the trustee shall distribute the remaining assets of each such beneficiaries share to the Grantor's heirs as determined under the laws of the Commonwealth of Virginia." This provision was not modified by later amendments.

## II. KWC's Administration of the Trust

As trustee, KWC initially acted through its employee, Cindy Laporta. In February 2017, Laporta informed the attorney working for the estate that Dr. Price "[l]ives with a boyfriend who suffers from dementia." In May 2017, David told Laporta about Ryan's current health condition,

- 3 -

stating Ryan was "mentally unable to deal with bills now" and "needs a house manager or caretaker to deal with daily living."

Laporta's role as trustee ceased on August 18, 2018 when she left KWC, and another KWC employee, Brenda Curtis, assumed the role of acting trustee of the trust. At the time of trial, Curtis was still acting as the trustee on behalf of KWC.

In June 2018, a few months prior to Curtis's appointment as acting trustee, Ryan's nephew, Alfred C. Fick, became attorney-in-fact for Ryan. By September 2018, Ryan was having difficulty living independently, so Fick moved Ryan to Maine, where Fick resided, to live in an assisted living center. Until Ryan's departure, the trust had paid the house's utilities, insurance, taxes, and maintenance from Share B of the trust.

In February 2020, Fick's wife told Curtis that Ryan was entering palliative care and his death was imminent. Curtis told Fick's wife that when Ryan passed away, Fick should file Ryan's will and leave Ryan's estate open because "there is still a payout for [Dr.] Price's estate" and that Curtis was "waiting for the estate to be closed." In response, Fick's wife told Curtis that "[w]e thought her estate wasn't paying [Ryan] anything other than staying in the house and money only if he needed it for health benefits or living."

Ryan died on February 16, 2020. Fick filed Ryan's will and qualified as personal representative of his estate.

Prior to his death, only $950 from the trust had been distributed to Ryan.[1] On January 6, 2021, Curtis sent Fick a receipt and release for the remainder of Ryan's distribution, $999,050. Fick signed and returned the receipt and release, but did not receive the funds, due to Curtis's uncertainty about whether certain trust provisions precluded the Ryan estate from receiving Ryan's distribution under the trust.

---

[1] This distribution consisted of a payment of accounting fees owed by Ryan to KWC.

- 4 -

Fick testified that the receipt and release request was the first time he was informed that Ryan was a beneficiary of a $1 million distribution under the trust. Fick further testified that he spoke with Curtis about Ryan's taxes in fall 2018. He stated that at that time, Curtis was aware he was acting as Ryan's attorney-in-fact, but did not provide him any information about the trust.

Curtis testified to the contrary, stating that she spoke with Fick in August 2018, explained she was the new trustee after Laporta's departure, and told Fick that Ryan was a beneficiary under the trust. Curtis stated that she gave this information to Fick in a phone call, which was not documented. She acknowledged that she had not advised Ryan or his representative of his right to obtain a copy of the trust and that she did not know if Laporta had advised Ryan of this right or given him a copy. Emails regarding the trust that were in Laporta's possession had been purged from KWC's computer system by the time of trial. Curtis had not provided a copy of the trust to Ryan, and had not provided an accounting of the trust to either Ryan or Fick. She stated that these documents had not been provided to Ryan or Fick while she was acting as trustee because neither had requested them.

### III. Assets Contained in the Estate and the Trust

At the time of Dr. Price's death in April 2017, the approximate value of assets in the trust was $1,572,000, which included her house, valued at $900,000. Her estate held approximately $2.6 million of assets, including approximately $590,909 in investment accounts, $1.7 million in retirement accounts, and $286,412 of jewelry and personal property. By the time of trial, the estate had made two distributions to the trust. The first distribution of $220,000 occurred in March 2019. The second distribution of $2.2 million occurred in May 2020, after Ryan's death.

Curtis did not list the house for sale when Ryan departed it in September 2018; she waited until February 2019, after David had hired a company to empty the home. The house was sold in May 2019 for $700,000 after being appraised for $900,000. Curtis did not believe she

had sufficient funds to make distributions at the time of Ryan's death because she thought that the proceeds of the house went to Share B.

KWC periodically communicated with Dr. Price's estate during the time period following her death but prior to Ryan's death. Shortly after Dr. Price's death, in April 2017, Curtis told the attorney for the estate that she did not expect the estate to take much longer than six months to pay over the assets contained in the estate. Curtis then communicated with the attorney for the estate in October 2018, December 2018, November 2019, and December 2019, asking for status updates on the transfer of assets from the estate to the trust. She received little to no response from the estate. The attorney for the estate did respond to Curtis's December 2018 request for an update, stating that the estate would provide a "significant distribution" to the trust; but in March 2019, the accountant for the estate emailed Curtis and stated, "[y]ou might remember we talked on the phone about the potential to pay out all Dr. Price's IRA funds to the trust before March 31 (our yearend). That won't be happening. I do plan to distribute an amount just over $200,000."

Throughout her communication with the estate, Curtis did not directly ask the estate to distribute all of the estate assets to the trust, and did not take any legal action to compel a distribution. Curtis explained that she did not want to pursue legal action because that would have "rack[ed] up expenses."

IV. Circuit Court Proceedings

In February 2021, as Curtis prepared to make a distribution to Ryan's estate, she read the trust documents again and for the "first time . . . realized" that "the predeceased beneficiary was still in the document as many times as it had been . . . rewritten." Curtis thought the predeceased beneficiary provision "contradicted Christina being disinherited." Based on this uncertainty, KWC, acting in a representative capacity as trustee of the trust, filed an amended complaint for

aid and direction asking the circuit court to determine who should receive Share A distributions from the trust.[2]

David and Christine filed amended answers to the amended complaint, stating their position that the disinheritance provision precluded Christine from receiving any portion of Share A that was not distributed to Ryan prior to his death and that half of Ryan's share should be distributed to David and half to Christine's son, Lee Greyson Dewberry (David, Christine, and Dewberry referred to hereafter as "the Price defendants").

Fick, as personal representative of the Ryan estate, filed an amended crossclaim against all defendants, asking the court to find that the predeceased beneficiary provision contradicted the terms and intent of later amendments to the trust and was thus void; therefore, Ryan's estate was entitled to the remainder of Ryan's distribution from Share A. In the alternative, should the circuit court not rule in its favor on the crossclaim, the Ryan estate filed a counterclaim against KWC and Curtis, alleging that they breached their fiduciary duty in their administration of the trust. The Ryan estate requested attorney fees in connection with the counterclaim.

Prior to trial, KWC filed a motion *in limine* to exclude the testimony of Joseph Stuart, an attorney designated by the Ryan estate as an expert witness in estate and trust administration and related fiduciary responsibilities. The circuit court held a hearing on the motion *in limine*, and denied the motion.

On the first day of trial, the circuit court heard KWC's request for aid and direction. After hearing evidence from Curtis regarding the terms of the trust, the circuit court heard argument from the Ryan estate and the Price defendants as to their interpretation of the trust terms. The court found that the trust language was unambiguous and ruled that, "[i]f [Ryan]

---

[2] The initial complaint was filed by Curtis, "in her capacity as Trustee of the [trust]." Leave to amend the complaint was sought to clarify that KWC, "acting through" Curtis, was the trustee. The circuit court granted leave to amend by a consent order.

received [the distribution] while he was alive, then it was his," but, due to the predeceased beneficiary provision, "the trust assets that were not distributed to him, he's not entitled to under the language of the trust."

Following this ruling, the circuit court heard the Ryan estate's breach of fiduciary duty counterclaim. The Ryan estate called Stuart as a witness, who opined that "the trustee was dilatory in making distributions to Mr. Ryan" and that the assets of the estate could have been transferred into the trust within six months. Stuart based his opinion on the type of assets in the estate, in particular the investment and retirement accounts, which could have been liquidated and transferred to the trust. He further opined that "the trustee did not take reasonable and prudent steps to . . . collect the funds from the estate, and then make the distribution[s] . . . under Share A." Stuart explained that this opinion was based on the fact that KWC was aware of Ryan's inability to live independently at the time of Dr. Price's death. Stuart stated that a partial distribution to Ryan would be consistent with the standard of care by a trustee. He further noted that KWC had the option to compel distribution from the estate by filing a petition in the circuit court. Stuart also opined on his interpretation of certain trust terms: that Ryan became entitled to his distribution upon the death of Dr. Price and that there were no health or welfare limitations on how Ryan's distribution could be used, as it was an outright gift.

After denying KWC's motions to strike, the circuit court found in favor of the Ryan estate on the breach of fiduciary duty counterclaim. In its ruling, the circuit court credited the testimony of Fick over Curtis, finding that it did not believe that Curtis told Fick that Ryan was a beneficiary of the trust in August 2018. The circuit court also found that KWC breached its fiduciary duty in regard to prudent administration of a trust on several separate and distinct grounds. It found that KWC failed in prudent administration of the trust when it: (1) failed to have knowledge of the terms of the trust, specifically the predeceased beneficiary provision; (2)

failed to keep the trust beneficiaries informed, as there was no evidence that Ryan was given the statutorily-required notice that he could request a copy of the trust and there was no evidence that Ryan or Fick were provided accountings of the trust[3]; (3) did not take reasonable steps to control and protect the trust property when it did not send "something more stern or strongly worded or . . . invoke the power of the courts" to try to have the estate transfer assets to the trust; and (4) did not seek to obtain aid and direction from the court regarding the house proceeds provision of the trust. The court stated, "There's a lot of different reasons here. All of which I think are independent and caused damage." The court found the damages to be $999,050 "because that's what should have been paid out."

The circuit court subsequently entered a final order in which it: (1) ordered, on aid and direction, that KWC pay out Ryan's remaining distribution from the trust to David and Dewberry, in equal shares, as the grantor's heirs under the laws of the Commonwealth; (2) entered judgment for the Ryan estate and against KWC on the counterclaim in the amount of $999,050, plus interest, and attorney fees and costs in the amount of $96,121.50. KWC filed objections to the final order. This appeal followed.

ANALYSIS

I. Standards of Review

"When a trial court has heard the evidence *ore tenus*, its decree is entitled to the same weight as that which attaches to a jury verdict." *Quantum Dev. Co. v. Luckett*, 242 Va. 159, 161 (1991). The trial court's findings of facts are binding upon an appellate court "unless they are plainly wrong or unsupported by the evidence." *Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va.

---

[3] The circuit court stated it was "absolutely incredible for a professional trustee company" to have "no communication . . . explaining what rights Mr. Ryan might have . . . as a beneficiary. And that the only communication . . . up until the point that Mr. Ryan dies or is on his death bed," was an unmemorialized telephone call "in which it's mentioned in kind of an offhand way."

750, 753 (2001). Further, a fact finder's determination of whether a trustee breached their fiduciary duty will not be disturbed on appeal unless that determination is plainly wrong or without evidence. *Stepp v. Foster*, 259 Va. 210, 216 (2000).

"For those issues that present mixed questions of law and fact, we give deference to the trial court's findings of fact and view the facts in the light most favorable to the prevailing party, but we review the trial court's application of the law to those facts *de novo*." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006). "Alleged errors involving statutory interpretation or application present questions of law that we review de novo on appeal." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 87 (2021). And interpretation of a trust document is a question of law reviewed de novo. *Riverside Healthcare Ass'n v. Forbes*, 281 Va. 522, 528 (2011).

An appellate court "review[s] a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 92 (2014) (quoting *John Crane, Inc. v. Jones*, 274 Va. 581, 590 (2007)). "However, a trial court has no discretion to admit clearly inadmissible evidence." *Id.*

## II. Code § 64.2-793

KWC contends that the circuit court erred by interpreting Code § 64.2-793 to allow damages against it where the statute allows damages only to restore the value of missing trust property or distributions.

Virginia's Uniform Trust Code, Code §§ 64.2-700 through -808, sets forth the duties of trustees when administrating trusts in Virginia. One such duty is that of prudent administration. "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." Code § 64.2-766.

- 10 -

Turning to violations of this duty, Code § 64.2-792(A) provides that "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." A separate statute, Code § 64.2-793, discusses damages for a breach of trust. It provides that "[a] trustee who commits a breach of trust is liable to the beneficiaries affected for the . . . amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred." Code § 64.2-793(A).

KWC asserts that the statutory language requiring the trustee to "restore the value of the trust" prohibits the Ryan estate from obtaining damages, because KWC never depleted the trust funds and thus there is nothing to "restore." Instead, KWC contends that the damages awarded against it increased rather than restored the amount of the trust distributions, because it was ordered to pay Ryan's distribution "a second time from its own pocket."

This Court is bound by the "plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." *City of Charlottesville v. Payne*, 299 Va. 515, 527 (2021) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)). "[O]ur primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). "[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction." *Payne*, 299 Va. at 527 (quoting *Vollin v. Arlington Cnty. Electoral Bd.*, 216 Va. 674, 679 (1976)).

Where a "statute's terms are undefined" by the legislature, we give those terms "their 'ordinary meaning,' in light of 'the context in which [they are] used.'" *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 384 (2014) (alteration in original) (quoting *Lawlor v.*

*Commonwealth*, 285 Va. 187, 237 (2013)). "In ascertaining such meaning, dictionary definitions may be consulted." *Peed v. Va. Dep't of Transp.*, 72 Va. App. 686, 696 (2021).

Without supplying a dictionary definition, KWC asserts on brief that the word "restore" in Code § 64.2-793 means only that a trustee is liable for funds that have been depleted by the trustee's acts. But KWC's interpretation employs a narrow definition of the word "restore," which we reject. Among other common definitions, "restore" can mean: "to give back"; "to put or bring back"; and "to bring back to or put back into a former or original state." *Restore*, *Webster's Third New International Dictionary* (2002). While "restore" can be used to signify the replacement of funds that have been depleted, the word can also be used to signify "put[ting] back into a former or original state." *Id.*

This last definition describes how the circuit court applied Code § 64.2-793(A) in this case—it placed Ryan's interest under the trust into its original state. The court found that if KWC had not breached its fiduciary duties in failing to administer the trust prudently, Ryan would have received his full distribution under Share A during his lifetime. Instead, due to KWC's delay, the predeceased beneficiary provision applied to Ryan when he died, and thus he was not entitled to his portion of the trust. By ordering KWC to pay the Ryan estate Ryan's remaining distribution under the trust, the court restored Ryan's position under the trust to its original state. Because KWC, the trustee, committed a breach of trust, it was thus liable to Ryan's estate for the amount required to restore the value of the trust distribution "to what [it] would have been had the breach not occurred," Code § 64.2-793(A), which was Ryan's

remaining distribution of $999,050.[4]  Therefore, we reject KWC's contention that the circuit

court erred by interpreting Code § 64.2-793 to allow damages against it.[5]

### III.  Legal Damages for Equitable Claim

KWC argues that the circuit court erred in concluding that the Ryan estate could recover

legal damages against KWC because the estate's interest was only that of a contingent

beneficiary.  KWC asserts that the Ryan estate's claims, if any, were in equity against the trust to

recover funds intended to be distributed to Ryan.[6]

---

[4] This interpretation of the statute is also supported by the comments found in the Third Restatement of Trusts.  The rule on a trustee's liability for a breach of trust is similar to the one found in Code § 64.2-793(A): "[a] trustee who commits a breach of trust is chargeable with . . . the amount required to *restore* the values of the trust estate and trust distributions to what they would have been if the portion of the trust affected by the breach had been properly administered."  Restatement (Third) of Trusts § 100 (2012) (emphasis added).  The comments to this rule state that "[t]he primary objectives of the rule of this Section" are "to make the trust and its beneficiaries whole, usually by restoring the trust estate and trust distributions to what they would have been if the portion of the trust affected by the breach had been properly administered."  *Id.* at § 100 cmt. a.  Here, the circuit court's damages award made Ryan "whole" by restoring the trust distribution to what it would have been had the trust been properly administered.

[5] KWC also argues on brief that "the court erred on the second day of trial by focusing not on its statutory authority to award damages to 'restore' Trust assets, but instead on fulfilling the Ryan Estate's expectations about what might have occurred if KWC had distributed the Trust funds during Mr. Ryan's lifetime."  KWC contends that "[t]he court's endeavor was not only beyond the court's statutory authority, it was entirely speculative."  We do not address KWC's argument that the damages award was speculative because that argument has been waived for several reasons.  First, this argument was not raised by KWC at trial.  *See* Rule 5A:18 (requiring a party to raise an objection "with reasonable certainty at the time of the ruling").  Second, the argument is not encompassed in KWC's assignment of error, which is limited to the circuit court's interpretation of Code § 64.2-793.  *See* Rule 5A:20(c) (requiring an opening brief to list "the specific errors in the rulings below").  Third, KWC provides no legal authorities on brief relating to whether the damages award was speculative.  *See* Rule 5A:20(e) (requiring that an opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error").

[6] "Since the General Assembly provided for the merger of law and equity, effective January 1, 2006, . . . there is now only 'one form of civil case, known as a civil action.'" *Worsham v. Worsham*, 74 Va. App. 151, 175 n.8 (2022) (quoting Rule 3:1).  "Although that merger created 'a single procedure system for civil cases . . . , it preserves in all respects the distinctions between law and equity, concerning the substance of equitable claims and defenses,

KWC's argument is based on the circuit court's finding that Ryan's entitlement to his distribution under the trust was dependent on whether he survived until distribution, at which point the predeceased beneficiary provision would defeat any interest he had in the trust.[7] Without addressing whether KWC is correct that the court's finding constituted a finding that Ryan's interest under the trust was contingent, or whether such a finding was correct, we conclude there is no basis to disturb the court's ultimate holding on this ground. KWC relies on *Ivey v. Lewis*, 133 Va. 122 (1922), in support of its argument that the damages award here was improper because, as Ryan was only a contingent beneficiary, the Ryan estate could seek recovery only through equitable means and not in the form of legal damages. In *Ivey*, the Supreme Court addressed whether the plaintiffs, who had a contingent interest in a property and filed suit for compensation for waste against the person in possession of the land, could properly maintain that suit. *Id.* at 134-35. The Court held, "As a contingent remainderman has no vested

---

rights of action, limitations principles, and the powers and limits on the courts in entertaining such actions.'" *Id.* (emphasis omitted) (quoting Kent Sinclair & Leigh B. Middleditch, *Virginia Civil Procedure* § 1.14 (7th ed. 2021)).

[7] On the first day of trial, the circuit court heard argument from counsel for the Ryan estate about whether, under an equitable vesting theory, Ryan's interest vested during his lifetime. The court stated that it understood counsel's argument, and that, "I think what you've said about Virginia law basically starting from the proposition that devises and bequests are construed as vesting at the time of the testator's death unless there's some intention to delay vesting, which is established by the testamentary documents, that we start from that position," but that "the document here indicates a specific intent to delay it, for whatever reason, until distribution." The court then stated it would not address the equitable vesting argument, because the Virginia Supreme Court had yet to consider the issue.

We need not decide whether Ryan's interest was in fact contingent, and instead assume for purposes of this appeal that it was, because in doing so we are resolving KWC's assignment of error on the best and narrowest ground—that even if contingent, the circuit court did not err in its damages award. "As we have often said, 'the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'"" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree," while the "'narrowest' answer to a legal question is the one affecting the least number of cases." *Id.*

interest in the property he cannot maintain a common law action to recover waste or damages in the nature of waste." *Id.* at 136. But the Court further held that "the rights of a contingent remainderman are much more extensive in equity than at law, for while he will not be allowed to recover damages for that which may not be his, he should be allowed to prevent the destruction of that which may become his." *Id.* (quoting 16 *Cyclopedia of Law and Procedure*, *Estates* 658 (William Mack ed., 1905)). The Court found that although the plaintiffs could not pursue a common law action for waste, they could maintain a suit in equity to enjoin or remedy waste upon the principal estate. *Id.* Accordingly, it follows from *Ivey* that "although a contingent beneficiary may not seek legal relief such as damages, he may seek equitable relief." *Keil v. Seth Corp.*, No. 3:21-cv-153, 2021 U.S. Dist. LEXIS 212042, at *14 (E.D. Va. Nov. 2, 2021) (interpreting *Ivey*).[8]

*Ivey*, however, does not support KWC's argument because here, the circuit court's award was not in the form of legal damages but instead was equitable in nature. "[T]he remedies of trust beneficiaries are *equitable* in character and enforceable against trustees in a court exercising equity powers." Restatement (Third) of Trusts § 95 (2012) (emphasis added).[9] In Virginia, the remedies available for a breach of trust have been codified in Code § 64.2-792 of our Uniform Trust Code. That statute provides that "[t]o remedy a breach of trust that has occurred or may occur, the court may" take the following actions:

> 1. Compel the trustee to perform the trustee's duties;
> 2. Enjoin the trustee from committing a breach of trust;

---

[8] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Jones v. Commonwealth*, 71 Va. App. 375, 382 n.2 (2019) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)).

[9] There is a limited exception to this rule—a beneficiary is allowed "to proceed against a trustee at law to enforce a right to a chattel or money if the trustee has violated an immediate, unconditional duty to transfer the chattel or pay the money to the beneficiary." Restatement (Third) of Trusts § 95 cmt. a (2012). This exception is not applicable here, where KWC had no "immediate, unconditional duty" to pay to the Ryan estate Ryan's distribution under the trust.

- 15 -

3. Compel the trustee to redress a breach of trust by paying money, restoring property, or other means;
4. Order a trustee to account;
5. Appoint a special fiduciary to take possession of the trust property and administer the trust;
6. Suspend the trustee;
7. Remove the trustee as provided in [Code] § 64.2-759;
8. Reduce or deny compensation to the trustee;
9. Subject to [Code] § 64.2-803, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; or
10. Order any other appropriate relief.

Code § 64.2-792(B). These remedies are all equitable in nature. *See* Kent Sinclair, 1 *Virginia Remedies* § 42-1 (2024) (noting that "[e]quity is a set of remedies unknown to the former 'law side' of the court system, in the form of injunctions, specific performance, reformation, rescission, restitution, and . . . other remedies").

Thus, KWC's reliance on *Ivey* is without merit, as the premise of KWC's argument is incorrect. The circuit court did not award legal damages to the Ryan estate, but rather ordered KWC to pay the Ryan estate $999,050, the amount of the trust funds owed to Ryan had he not passed away prior to distribution. This was an equitable remedy specifically provided for in Code § 64.2-792(B), which provides that a court may "[c]ompel the trustee to redress a breach of trust by paying money, restoring property, or other means."[10] Accordingly, even assuming that Ryan's interest in the trust distribution was contingent because it was dependent on him

---

[10] KWC characterizes the court's damages award in this case as one of legal damages because it was monetary in nature. It is true that "an action for money damages was 'the traditional form of relief offered in the courts of law.'" *Ingram v. Commonwealth*, 62 Va. App. 14, 27 (2013) (quoting *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990)). But the Third Restatement of Trusts notes, in the comments to its section discussing the measure of liability for a trustee resulting from a breach of trust, that "[i]f suit for breach of trust is successfully brought against the trustee, recovery may take the form of a money judgment." Restatement (Third) of Trusts § 100 cmt. a(2) (2012). Thus, while money damages are traditionally a legal remedy, they are also available as an equitable remedy in the context of breaches of trust.

surviving until the distribution of the funds, the circuit court did not err in ordering KWC to pay a monetary sum in damages to the Ryan estate, as this award was an equitable remedy codified in statute rather than legal damages.[11]

## IV.  Reasonable Reliance on Trust Terms

KWC argues that the circuit court erred by holding it liable for breach of fiduciary duty based on its failure to use the funds received from the sale of Dr. Price's house to pay Ryan's distribution under the trust.  It contends this was error because it reasonably relied on its interpretation of the trust terms in not making a distribution to Ryan at the time of the house's sale.

Relevant here, the trust specifies that "Share A will consist of . . . $1,250,000.00," and that "Share B will consist of all of the trust funds in excess of . . . $1,250,000.00."  Related to Dr. Price's house, the trust provides that Ryan could live in the home for five years following Dr. Price's death.  The trust further provides that "[u]pon the termination of this living arrangement, either by [Ryan's] death or voluntary vacation of the premises," the trustee may "sell [the] residence and distribute those funds, along with any remaining expense funds, as the final portion of Share B and in accordance with the terms of Share B."

On the first day of trial, the circuit court raised the issue of whether, under the terms of the trust, the proceeds from the sale of Dr. Price's house would go to Share B, or instead Share

---

[11] We further note that our conclusion is also supported by the definitional statute of the Uniform Trust Code, which specifically includes contingent beneficiaries in its definition of a "beneficiary" under that chapter.  *See* Code § 64.2-701 (defining "beneficiary" as "a person that . . . has a present or future, vested or contingent, beneficial interest in a trust").  Thus, whether or not Ryan was a contingent beneficiary did not affect the Ryan estate's ability to seek relief for KWC's breach of trust under Code §§ 64.2-792 and -793.  *See* Code § 64.2-792(A) (providing that "[a] violation by a trustee of a duty the trustee owes to *a beneficiary* is a breach of trust" (emphasis added)); Code § 64.2-793 (providing that "[a] trustee who commits a breach of trust is liable to *the beneficiaries* affected for the . . . amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred" (emphasis added)).

A, because Share A had not been fully funded at the time of the house's sale. Counsel for KWC noted that KWC's interpretation of the trust was that the house went to Share B. The court disagreed with KWC, finding that the trust language "which talks about payout from the sale of the house . . . as the final portion of Share B does not change the overall architecture of the trust, which was designed to make a guaranteed payment under Share A of the amounts indicated." Based on its interpretation of the "overall architecture" of the trust, the court found the proceeds of the house would go to fund Share A first, rather than to the residual share, Share B.

On the second day of trial, during KWC's motion to strike, the circuit court stated that "the evidence in the light most favorable to [the Ryan estate] is there was plenty of money by . . . the sale of the house to pay the Share A distributions." In response, counsel for KWC asserted the trust was confusing on this point and that under Code § 64.2-797, KWC was allowed to rely on its reasonable interpretation of the trust. In its ruling, the circuit court rejected this argument and found that KWC breached its fiduciary duty by not seeking aid and direction from the court regarding the house proceeds provision of the trust. The court stated that "[t]he question becomes was the reading that K.W.C. applied unreasonable" and that it "s[aw] their reading of it," but "to the extent that there's a reasonable reading inconsistent with another reasonable reading, I think that puts a burden on the trustee to get aid and direction."

Code § 64.2-797 provides that a "trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." KWC argues that the circuit court misapplied Code § 64.2-797 because the circuit court itself found KWC's interpretation of the trust terms reasonable. Thus, KWC contends, the court erred in finding that KWC was liable to Ryan for a breach of trust that resulted from reasonable reliance on the terms of the trust.

We need not, however, consider this argument on appeal. Even assuming that the circuit court misapplied Code § 64.2-797 in finding that KWC breached its fiduciary duty by not obtaining aid and direction from the court, any such error was harmless, because the circuit court's overall holding finding a breach of trust by KWC included other independent rulings providing separate grounds for affirmance.

"Any error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis because 'Code § 8.01-678 makes "harmless-error review required in *all* cases."'" *Spruill v. Garcia*, 298 Va. 120, 127 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 420 (2017)). "Absent an error of constitutional magnitude, 'no judgment shall be arrested or reversed' '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Id.* (alteration in original) (quoting Code § 8.01-678). "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." *Forbes v. Rapp*, 269 Va. 374, 382 (2005). "The harmless-error check on judicial power has never been a begrudged limitation"; instead, it is favored by our courts "because it stems from the 'imperative demands of common sense.'" *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 853 (2019) (quoting *Oliver v. Commonwealth*, 151 Va. 533, 541 (1928)).

Here, the circuit court found that KWC breached its fiduciary duty on several separate and distinct grounds: (1) it failed to have knowledge of the terms of the trust; (2) it failed to keep the trust beneficiaries informed; (3) it did not take reasonable steps to control and protect the trust property; and (4) it did not seek to obtain aid and direction from the court regarding the house proceeds provision of the trust. The court specifically noted in its ruling that "there's a multitude of reasons why . . . the trustee did not act in a reasonable or prudent manner. Any one

- 19 -

of which, . . . would be sufficient frankly, to pay out, that had they not breached in these ways would have been sufficient to get Mr. Ryan paid before he died." The court also stated, "There's a lot of different reasons here. All of which I think are independent and caused damage."

Assuming the court misapplied Code § 64.2-797 as to KWC's interpretation of the house proceeds provision, this misapplication had no effect on the other three independent grounds for the circuit court's ruling that KWC breached its fiduciary duty to Ryan. Thus, because any error in the court's determination regarding KWC's reasonable reliance on the trust terms "could not have affected the court's result," *Forbes*, 269 Va. at 382, we conclude that the harmless error doctrine applies and thus affirm the court's decision on that basis. *See Muhammad v. Commonwealth*, 269 Va. 451, 526 (2005) (holding that even if the circuit court erred in granting a jury instruction, "the error would be harmless beyond a reasonable doubt" because the jury's verdict "was predicated upon additional and independent findings" supporting the verdict).

V. Breach of Fiduciary Duty

KWC argues that the circuit court erred by misapplying three statutes in the Uniform Trust Code in concluding it owed a fiduciary duty to Ryan to avoid operation against him of the predeceased beneficiary provision: specifically, Code § 64.2-765 (duty of impartiality), Code § 64.2-766 (duty to consider the purposes and circumstances of the trust), and Code § 64.2-105 (ability to retain or dispose property). We reject KWC's contentions and conclude that the court did not err in applying these statutes.

KWC asserts that the circuit court's ruling prioritized Ryan's interest over the interests of other beneficiaries, contradicting KWC's duty of impartiality. Code § 64.2-765 provides, "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." KWC asserts that the circuit court placed more importance on Ryan receiving his distribution over the

interests of David, Dewberry, and the charitable beneficiaries under Share B. But we find that none of the other beneficiaries' interests would have been harmed if KWC had acted in the manner the court found reasonable, that is, by acting sooner to distribute Ryan's share of the trust to him. The trust's purpose was to provide distributions of certain sums to both of the named beneficiaries of Share A, Ryan and David, and not Dewberry. Dewberry was only an unnamed heir at law who received a portion of Ryan's distribution under the predeceased beneficiary provision after Ryan died. In addition, David's interest would not have been affected by a more-timely distribution, as he would have received what was intended by the trust terms, an outright distribution of $250,000, rather than an increased distribution due to the delay. And under the trust terms, the Share B charitable beneficiaries only received funds after Share A was funded, showing an intent by Dr. Price to prioritize the Share A beneficiaries over those in Share B. Thus, KWC taking steps to make an earlier distribution would not have violated its duty of impartiality. This would not have prioritized Ryan's interest, as asserted by KWC, but rather would have provided distributions to all beneficiaries that would have aligned with the intent of Dr. Price as expressed in the trust language.

KWC next argues that the court's finding that KWC should have pursued collection of funds from Dr. Price's estate more aggressively contradicted KWC's duty to consider the purposes of the trust. Code § 64.2-766 provides, "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust." KWC asserts that Dr. Price selected her son to administer her estate, and notes that the circuit court found "that the overall architecture of this arrangement as Dr. Price saw to it was that the estate and trust would not be adversarial to one another." But, even considering that Dr. Price intended for the estate and trust to work together in accomplishing the purposes of the trust, we do not find this dispositive as to whether KWC

- 21 -

properly considered the purposes of the trust in administering it. Regardless of who was chosen as the executor of the estate, the purpose of the trust was to distribute funds to David and Ryan under Share A of the trust, with the residual beneficiaries receiving the remainder under Share B. While Dr. Price might have intended for the estate and trust to work together, there was a significant delay in moving estate assets into the trust, which in turn frustrated the purpose of the trust.

KWC further argues that Code § 64.2-105 granted KWC discretion in the timing of distributions, and thus the court erred in finding that KWC should have made an earlier distribution of trust assets. Code § 64.2-105 provides that a trustee may be given the power "[t]o keep and retain any or all . . . property . . . for such time as the fiduciary deems best, and to dispose of such property by sale, exchange, or otherwise as and when such fiduciary deems advisable." Code § 64.2-105(B)(1). We disagree with KWC's reading of this statute, as the statute does not specifically discuss when distributions to beneficiaries should be made. Instead, it speaks to the retention or disposal of property in the hands of the trust, and gives the trustee discretion on the timing of the sale of trust property. Here, the property was not in the trust, but in the estate. Code § 64.2-105 is silent on the question of when a trustee should make distributions from a trust, and thus does not support KWC's argument that the court erred in determining that it should have taken action to force a quicker transfer of assets from the estate to the trust.

VI. Burden of Proof

KWC asserts that the circuit court erred in holding it liable for breach of fiduciary duty based on its determination that there was no evidence of Ryan or Fick's knowledge of Ryan's interests as a trust beneficiary. KWC contends that the court misapplied the respective burdens of proof, shifting the burden to KWC to affirmatively disprove the Ryan estate's contentions.

The circuit court held that KWC did not fulfill its fiduciary duty when it failed to keep Ryan or Fick informed about the administration of the trust, and also failed to inform Ryan of his right to request a copy of the trust. Code § 64.2-775(A) provides, "A trustee shall keep the qualified beneficiaries[12] of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Code § 64.2-775(B) requires that a trustee, "[w]ithin 60 days after . . . the date the trustee acquires knowledge that a formerly revocable trust has become irrevocable, whether by the death of the settlor or otherwise, shall notify the qualified beneficiaries of the trust's existence . . . [and] of the right to request a copy of the trust instrument."

Here, the record contains evidence demonstrating that KWC breached its fiduciary duty under these statutory provisions. As to the duty to keep beneficiaries informed of the administration of the trust and the facts necessary to protect their interests under Code § 64.2-775(A), KWC was aware that Fick was Ryan's attorney-in-fact by fall 2018. KWC was also aware that Ryan suffered from dementia. Fick testified that the first time he was made aware that Ryan was the beneficiary of a $1 million distribution under the trust was nearly a year following Ryan's death, in January 2021, when Curtis sent Fick a receipt and release for the remainder of Ryan's distribution. Here, KWC failed in its duty to keep Ryan informed of the

---

[12] A "qualified beneficiary" is

> a beneficiary who, on the date the beneficiary's qualification is determined, (i) is a distributee or permissible distributee of trust income or principal; (ii) would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in clause (i) terminated on that date without causing the trust to terminate; or (iii) would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

Code § 64.2-701. KWC did not argue below, and does not argue on appeal, that Ryan was not a qualified beneficiary under the terms of the trust.

- 23 -

administration of the trust and the facts necessary to protect his interests when it failed to provide any information to Fick, Ryan's attorney-in-fact, regarding the trust terms, including the $1 million distribution or the predeceased beneficiary provision.

Further, there is no evidence in the record establishing that KWC met its duty under Code § 64.2-775(B) to notify Ryan of the trust's existence within 60 days of Dr. Price's death. Sixty days after the death of Dr. Price, Laporta was acting on behalf of KWC as the trustee of the trust. At trial, Curtis acknowledged that she did not know if Laporta sent Ryan a copy of the trust, as Laporta's records had been lost. Curtis was "not aware of any time that KWC" sent Ryan a copy of the trust or notification of his right to receive the same. Fick, who became Ryan's attorney-in-fact in June 2018, testified that he did not know whether Ryan had been provided with a copy of the trust.

But KWC argues that the circuit court erred in finding that this evidence demonstrated a breach of fiduciary duty because "[t]he court's analysis shifted the burden to KWC to affirmatively disprove contentions about lack of statutory notice from KWC." "When a plaintiff brings suit against a trustee for breach of trust, the plaintiff generally bears the burden of proof." Restatement (Third) of Trusts § 100 cmt. f (2012). This

> general rule, however, is moderated in order to take account of the trustee's duties of disclosure . . . and of recordkeeping and reporting . . . as well as the trustee's superior (often, unique) access to information about the trust and its activities, and also to encourage the trustee's compliance with applicable fiduciary duties.

*Id.* While the Ryan estate had the burden to prove that KWC committed a breach of trust, it did so by producing evidence that no records from KWC indicated that the statutory notice required under Code § 64.2-775(B) had been given to Ryan. In noting that there were no records showing that notice was given to Ryan, the court did not shift the burden of proof to KWC; it merely took

- 24 -

into account the credible evidence presented by the Ryan estate, that is, the lack of records themselves.

Because the evidence demonstrated that KWC failed to keep Ryan or Fick informed about the administration of the trust, and also failed to inform Ryan of his right to request a copy of the trust, we reject KWC's contention that the court erred in finding a breach of fiduciary duty based on these grounds.

## VII.  Conclusion of Law Testimony

KWC argues that the court erred in admitting the expert testimony of an attorney, Joseph Stuart, and then relying on Stuart's opinion testimony to change the court's prior interpretation of the trust.[13]

Code § 8.01-401.3(B) provides that, "No expert or lay witness while testifying in a civil proceeding shall be prohibited from expressing an otherwise admissible opinion or conclusion as to any matter of fact solely because that fact is the ultimate issue or critical to the resolution of

---

[13] The Ryan estate argues that KWC has failed to preserve this issue for appellate review. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Upon reviewing the record in full, we conclude that KWC did preserve this argument under Rule 5A:18. KWC filed a motion *in limine* to exclude Stuart's testimony on a different basis, arguing that his "expert opinion lacks an adequate foundation regarding the applicable professional standard of care in the facilitation of claimed fiduciary duties and is based on assumptions and speculation with no apparent basis in fact." Prior to trial, the circuit court held a hearing on the motion *in limine*, and subsequently denied the motion. A transcript of that hearing is not included in the record. But at the outset of Stuart's testimony at trial, counsel for the Price defendants noted that KWC, at the motion *in limine* hearing, "raise[d] the . . . basic evidentiary premise of [Code §] 8.01-401.3(B) that . . . nobody can testify as to legal conclusions and apply law to facts and say that somebody breached the fiduciary duty and just be a third lawyer here." Counsel for KWC also objected to Stuart's testimony at trial, stating that he "reserve[d] or renew[ed]" his objection "from the motion [in] limine on the basis that while Mr. Stuart may know a lot about trust and estates law, [counsel] would argue he does not have any unique experience. The [c]ourt does not have . . . its own legal expert, to testify as an expert." Here, despite the record lacking the transcript of the motion *in limine* hearing, it is clear that KWC objected to Stuart's testimony at that hearing on the basis that it violated Code § 8.01-401.3(B)'s prohibition on witness testimony providing a conclusion of law. Thus, we address this argument on appeal.

the case." But that subsection further provides, "However, in no event shall such witness be permitted to express any opinion which constitutes a conclusion of law." *Id.*

Our review of Stuart's testimony indicates that most of it consisted of opinions regarding KWC's administration of the trust and the normal procedures and timelines for the administration of trusts and estates. KWC does not challenge this testimony. But KWC does challenge portions of Stuart's testimony in which he opined as to the nature of the trust's distribution to Ryan based on Stuart's interpretation of the trust language. Specifically, in response to questioning by counsel for the Ryan estate, Stuart stated, "[i]n this case, Mr. Ryan became entitled according to the terms of the trust . . . upon the death of Dr. Price." On cross-examination, counsel for KWC asked Stuart whether there was "any requirement of Mr. Ryan or anyone on his behalf to make a request for any health and welfare-type of payments to trigger that duty?" When Stuart replied no, counsel asked, "So your opinion is K.W.C. should have . . . just turned over a million dollars to Mr. Ryan to just have available in case he ever needed it?" Stuart replied, "Well, it's an outright distribution under the trust." He explained that in his view, "[b]ased on the wording of the trust," KWC had an absolute duty to provide the bequest to Ryan because "there are no limitations . . . . It's an outright gift."

We agree with KWC and conclude that the circuit court erred in admitting Stuart's opinions that Ryan was entitled to his distribution at the time of Dr. Price's death and that this distribution was an outright bequest that was not limited to Ryan's health and welfare needs. Through this testimony, Stuart opined as to legal conclusions based on his interpretation of the trust terms. *See Price v. Taylor*, 251 Va. 82, 86 (1996) (holding that attorneys' testimony that a contract was valid on its face because it recited legally adequate consideration was inadmissible under Code § 8.01-401.3(B) because the testimony was "not evidence regarding the existence of

an offer, acceptance, or consideration, but purport[ed] to state the legal consequences of those factual predicates").

While the circuit court erred in admitting certain portions of Ryan's testimony, we conclude that this error does not require reversal because it was harmless. Examining the court's holding in full, "we can conclude that the error at issue could not have affected the court's result." *Forbes*, 269 Va. at 382. While KWC alleges that Stuart's testimony was admitted in error, it does not state what part of the court's ruling this testimony impacted. Based on our review of the record, we conclude that this testimony had no effect on any of the court's grounds for finding KWC in breach of its fiduciary duty.

Here, any determination the court made regarding whether Ryan's distribution under the trust vested upon Dr. Price's death, or whether there were any health and welfare limitations on his distribution, could not have impacted its overall ruling. It specifically found, during argument on the motion to strike, that the distribution to Ryan under the trust "was there for his use during his lifetime." Later, in its ruling on the breach of fiduciary duty counterclaim, the court stated that if KWC had not breached its duty, Ryan would have been "paid before he died," and the damages were "what should have been paid out" to Ryan: the remaining $999,050 of his distribution. By finding that Ryan was entitled to receive the distribution during his lifetime, the circuit court rendered any findings about when, exactly, Ryan was entitled to the distribution, and whether he could only use the funds for his health and welfare, immaterial to the court's ultimate holdings—that KWC breached its fiduciary duty by its failure to have knowledge of the predeceased beneficiary provision, its failure to provide notice to Ryan of the trust's existence

and his right to obtain a copy of the trust, and its failure to take action to compel a faster distribution.[14]

### VIII.  Attorney Fees

KWC argues that the circuit court erred in awarding fees against it because it initiated the litigation in a representative capacity.

"The general rule in this Commonwealth is that, in the absence of a provision in a statute, rule, or contract to the contrary, a trial court may not award attorney[] fees to a party merely on the basis of that party's having prevailed upon an issue or cause." *Emmanuel Worship Ctr. v. City of Petersburg*, 80 Va. App. 100, 116 (2024) (alteration in original) (quoting *Tonti v. Akbari*, 262 Va. 681, 685 (2001)).  "This is the so-called 'American Rule,' and its purpose is to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party." *Id.* (quoting *Tonti*, 262 Va. at 685).  Here, the Uniform Trust Code specifically provides for attorney fees in matters involving trusts.  "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award

---

[14] KWC notes that the record reflects that the circuit court explicitly relied on Stuart's opinion that Ryan's distribution was an outright bequest that was not limited to Ryan's health and welfare needs.  In denying KWC's motion to strike, the court stated, "I think the evidence is sufficient to show that there's . . . not a limitation on health and welfare that's you know -- because I just have Mr. Stuart's testimony on that.  I have to give you the benefit of that testimony.  So it's an outright gift."  However, the court's reliance on this testimony does not change our conclusion.  Even if the court relied on Stuart's testimony that the distribution was without limitation, this finding did not change the court's ultimate holdings.  The court determined that Ryan was entitled to the distribution under the trust during the course of his lifetime; thus, it did not matter whether or not it found that the distribution was with or without any limitation.  The court only had to determine whether Ryan would have received his distribution during his lifetime if KWC had made the distribution in a timely manner.

KWC also contends that the circuit court erred by interpreting the trust, on the second day of trial, as providing an outright distribution to Ryan, without any health or welfare limitations.  It asserts that this contradicted the court's conclusion on the first day of trial that the trust provided only for Ryan's limited health and welfare expenses.  We need not address this argument on appeal, for the same reasons stated above—the court's finding on the health and welfare language was not dispositive as to its overall ruling, so whether the court changed course on its finding regarding this language during the trial is immaterial.

costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Code § 64.2-795. An award of attorney fees under this statute is discretionary, *see Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 254 (2017), and thus we review the circuit court's decision under an abuse of discretion standard. But "[t]he interpretation of a statute 'presents a pure question of law and is accordingly subject to de novo review by [our] Court.'" *Reineck v. Lemen*, 292 Va. 710, 721 (2016) (quoting *Washington v. Commonwealth*, 272 Va. 449, 455 (2006)).

KWC, relying on *Reineck*, argues that because it initiated the litigation in a representative capacity, the circuit court erred in awarding fees against it. In that case, Reineck filed suit in his capacity as curator of an estate against the trustees of a trust, alleging that the trustees had breached their fiduciary duties. *Id.* at 716. The circuit court found in favor of the trustees and awarded the trustees their attorney fees under Code § 64.2-795. *Id.* at 720-21. On appeal, Reineck argued, among other things, that "Code § 64.2-795 does not authorize an award of fees against him personally when he brought the case in a representative capacity, i.e., as curator for the estate." *Id.* at 721. Our Supreme Court concluded "that Code § 64.2-795 does not provide for an award of attorney's fees assessed against a litigant personally when that litigant is acting in a representative capacity." *Id.* It noted that "a person who sues or is sued in his official or representative capacity is, in contemplation of law, regarded as a person distinct from the same person in his individual capacity and is a stranger to his rights or liabilities as an individual." *Id.* at 722 (quoting *Alexander v. Todman*, 361 F.2d 744, 746 (3d Cir. 1966)). Further, Code § 64.2-795 specifically permits attorney fees solely against a "party." *Id.* at 723. The Court held that "[t]he party to the suit was Reineck as curator, not Reineck personally. Accordingly, this case presents no recognized basis in Virginia law for departing from the American Rule, and we hold that the trial court erred in awarding attorney's fees against Reineck personally." *Id.*

The instant case is factually distinguishable from *Reineck* because the Ryan estate's counterclaim was filed against KWC in its personal, not representative, capacity. While KWC initiated its amended complaint for aid and guidance in its representative capacity, the Ryan estate's counterclaim sought personal liability against KWC for its breach of fiduciary duty. In its counterclaim, the Ryan estate requested the circuit court to "enter judgment in its favor and against KWC and Ms. Curtis in the amount of $999,050.00." Further, in its pleadings, KWC itself noted that it was being sued on the counterclaim in its personal capacity. In KWC's demurrer to the counterclaim, KWC states that the Ryan estate is seeking "judgment against [KWC and Curtis] personally in the amount of $999,050.00." And in its motion for summary judgment, it argued that "[t]he faulty assumption" of the counterclaim was "that *if* the Court concludes Mr. Ryan was disinherited by operation of the Predeceased Beneficiary Provision, then KWC and Ms. Curtis should *personally* pay Mr. Ryan's estate what he would have received *if* Share A had been fully distributed prior to his death."

The Uniform Trust Code allows the Ryan estate to hold KWC personally liable for its breach of fiduciary duty. *See* Code § 64.2-801(B) ("A trustee is personally liable for torts committed in the course of administering a trust . . . if the trustee is personally at fault."). Because KWC was named in its individual capacity as a party to the counterclaim, the trial court had the authority under Code § 64.2-795 to award attorney fees against KWC personally for its breach of its fiduciary duty, despite the fact that it initially brought the amended complaint for aid and direction in its capacity as trustee.

## III. CONCLUSION

For the reasons stated above, we affirm the decision of the circuit court.

*Affirmed.*